58 N.J. Super. 179 (1959)
155 A.2d 789
CONDENSER SERVICE & ENGINEERING CO., INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, A CORPORATION OF MASSACHUSETTS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 2, 1959.
Decided November 20, 1959.
*180 Before Judges CONFORD, FREUND and HANEMAN.
Mr. Harold Farkas argued the cause for plaintiff-appellant (Messrs. Schapira and Farkas, attorneys; Mr. Schapira, of counsel).
Mr. Frank Fink argued the cause for defendant-respondent (Mr. James J. Carroll, attorney; Mr. Fink, on the brief).
The opinion of the court was delivered by FREUND, J.A.D.
This is an action under the Declaratory Judgment Act, N.J.S. 2A:16-50 et seq., to determine whether two boilers which plaintiff was installing at the Veterans' Administration Hospital, Livermore, California, and which were substantially destroyed in an explosion on October 6, 1951, were "property in the care, custody or control" of the plaintiff or "property as to which" plaintiff *181 "for any purpose [was] exercising physical control" on that date. The case concerns a comprehensive general liability insurance policy issued to plaintiff excluding property of that description from coverage. Upon a remand ordered by this court, Condenser Service & Engineering Co. v. American Mut. Liability Ins. Co., 45 N.J. Super. 31 (App. Div. 1957), certification denied 24 N.J. 547 (1957), the trial judge of the Law Division, sitting without a jury, at the conclusion of the proofs, held that the exclusionary clause was applicable. From the consequent judgment of dismissal in favor of the defendant insurer, plaintiff appeals.
Plaintiff, a New Jersey corporation, is in the heat engineering business. In 1951 it had a plant in Edgemoor, Delaware, at which it manufactured boiler parts. Each part was shipped separately, and then the boiler was constructed at the installation site. On April 28, 1950 plaintiff entered into a contract with the United States Government to remove two existing boilers at the California Veterans' Hospital and to replace them with two new ones. The boilers to be installed each weighed 60 to 70 tons, and they were built on concrete foundations in an existing building at the hospital. Plaintiff's agent, Lawrence L. Faries, was in charge of the work, and when he arrived in California he engaged, in plaintiff's employ, various sub-contractors and workmen.
There were four boilers in the hospital boiler house. The two to be dismantled, No. 3 and No. 4, were separated by a partition from those upon which plaintiff was not working, No. 1 and No. 2. Installations of the type involved here require the building of a concrete foundation, the setting of structural steel upon the foundation, the hanging of two heavy drums on the steel frame, and the erection of tubes in the drums. This entire unit is then encased "by a refractory, an outer coating of steel, and then insulation." Plaintiff furnished all of the materials for the installation, with the exception of gas-burning equipment which was furnished by the Government and installed by plaintiff.
*182 When the explosion occurred, the installation was practically completed. The boilers were being put through a drying process, which consisted of the lighting of the gas burners in the boilers so that they might operate for several hours at low flame and dry out the interiors. At this time none of the efficiency tests, called for by plaintiff's contract with the Government, had been made, and the work had not been accepted. Plaintiff had received almost the entire contract price of $49,474, except for a 10% retention for final completion and an additional amount representing a dispute between the Government's estimate of completion and the plaintiff's estimate.
In attempting to fire one of the gas burners on October 6, 1951, an employee of the plaintiff used a three-foot torch, causing boiler No. 4 to explode. Plaintiff's resultant liability to the Government for damages to other parts of the building has been satisfied by the defendant under the policy, but the insurer refuses to defend plaintiff in a now-pending negligence suit brought by the Government in the United States District Court for the District of New Jersey to recover for the damage to boilers No. 3 and No. 4.
In addition to Mr. Faries and the personnel he hired for plaintiff, Government employees were present in the boiler house, attending to the operation of boilers No. 1 and No. 2. The proofs do not indicate they had any work to do in connection with the boilers in question. Two Government representatives, Mr. Chartier and Mr. Van Blitter, were periodically present in the building, but they merely checked the work for compliance with the contract and specifications.
Article 10 of the specifications provided that plaintiff was "responsible for all materials delivered and work performed until completion and final acceptance." Article 16 specified that material and work covered by partial payments became the sole property of the Government, but that the contractor still had "sole responsibility" for all such materials and work.
*183 The insurance policy, which had been issued on June 1, 1951, required defendant to pay on behalf of plaintiff all sums which plaintiff became legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident arising out of plaintiff's business operations. The policy excluded from coverage "injury to or destruction of * * * property in the care, custody or control of the insured or property, as to which the insured for any purpose is exercising physical control * * *."
Expressed in the brief of the plaintiff is the view that, since the proprietary interest in the materials and parts constituting the boilers had passed to the Government under the contract and since the boilers had become affixed to the real estate, it was the Government and not the insured that had "care, custody or control" of the units. Defendant replies that the Government had no right under the contract to interfere with the progress of the work and no responsibility over the boilers until the efficiency tests were made and the work finally accepted, and therefore there was no one but the plaintiff that had control.
The scope of the "care, custody or control" exclusion has been considered in a number of cases from sister states, collected in Annotation 62 A.L.R.2d 1242 (1958). The weight of judicial authority and the rule to which we subscribe is that the exclusion is not applicable where the property damaged is merely incidental to the property upon which the work is being performed by the insured. Cohen v. Keystone Mut. Casualty Co., 151 Pa. Super. 211, 30 A.2d 203 (Super. Ct. 1943); Rex Roofing Co. v. Lumber Mut. Cas. Ins. Co., 280 App. Div. 665, 116 N.Y.S.2d 876 (App. Div. 1952), appeal denied 281 App. Div. 744, 118 N.Y.S.2d 732 (App. Div. 1953), 305 N.Y. 932, 112 N.E.2d 288 (Ct. App. 1953); Maryland Cas. Co. v. Hopper, 237 S.W.2d 411 (Tex. Civ. App. 1950); A.T. Morris & Co. v. Lumber Mut. Cas. Ins. Co. of New York, 163 Misc. 715, 298 N.Y.S. 227 (Mun. Ct. N.Y.C. 1937). Where, however, the property *184 that is damaged is under the direct and continuous supervision of the insured and is a necessary element of the work involved, the property will be deemed in the care, custody or control of the insured. Hardware Mut. Cas. Co. v. Mason-Moore-Tracy, Inc., 194 F.2d 173 (2 Cir. 1952); L.L. Jarrell Const. Co. v. Columbia Cas. Co., 130 F. Supp. 436 (D.C.S.D. Ala. 1955); Root Motor Co. v. Massachusetts Bonding & Ins. Co., 187 Minn. 559, 246 N.W. 118 (Sup. Ct. 1932); Maryland Cas. Co. v. Holmsgaard, 10 Ill. App.2d 1, 133 N.E.2d 910 (App. Ct. 1956). The facts of the present case clearly require application of the latter rule.
Ownership by the Government of the materials for which payment had been made does not lead to a contrary conclusion. The word "control" as used in the exclusionary clause contemplates possessory handling, not proprietary control. International Derrick & Equipment Co. v. Buxbaum, 240 F.2d 536, 62 A.L.R.2d 1237 (3 Cir. 1957).
The decision in Boswell v. Travelers Indemnity Co., 38 N.J. Super. 599 (App. Div. 1956), upon which plaintiff's entire case is rested, is plainly distinguishable on its facts. In that case, the insured was merely making a repair on boilers long theretofore in use and constituting an integral part of the real estate. The contractor was only to replace the tubes in two heating units in an office building. An agent of the owner was in active collaboration in the work being done.
Here, however, the plaintiff supplied new boilers, manufactured and assembled by it. Plaintiff had the "sole responsibility" for the installation. The Government's Mr. Van Blitter merely inspected to ensure compliance with the contract specifications. At the time of the explosion, the work was not completed; the boilers had not yet become a functioning part of the hospital building, as in Boswell, supra. Essential tests remained to be performed when the drying process ended. No one except the plaintiff had the right to do anything to or with the boilers until the time *185 of acceptance by the Government. In sum, physical control of the apparatus was being exercised exclusively by the plaintiff when the mishap occurred.
It is true that the court in the Boswell case found the phrase "care, custody or control" ambiguous in that the component terms have been the focus of considerable judicial construction. 38 N.J. Super. at page 607. And there can be no doubt that the words, taken individually, are ambiguous when considered abstractly and apart from any factual context. But we perceive no ambiguity with respect to whether or not the phrase is aptly descriptive of plaintiff's relationship to the boilers as it existed on October 6, 1951. The complement of principles of construction attendant upon the presence of an ambiguity need not, therefore, engage our attention. See, generally, Schneider v. New Amsterdam Cas. Co., 22 N.J. Super. 238, 242-243 (App. Div. 1952); Minkov v. Reliance Ins. Co. of Philadelphia, 54 N.J. Super. 509, 518 (App. Div. 1959).
The judgment of the Law Division is affirmed.