Leiter Electric Company, a Corporation, Plaintiff-Appellant, v. Bituminous Casualty Corporation, Defendant-Appellee.

Gen. No. 68–6.

Third District.

September 19, 1968.

Rehearing denied November 19, 1968.

Leiter, Newlin, Fraser, Parkhurst & McCord, of Peoria, for appellant.

McConnell, Kennedy, McConnell & Morris, of Peoria, for appellee.

STOUDER, J.

Plaintiff insured, Leiter Electric Company, brought this action in the Circuit Court of Peoria County against Bituminous Casualty Corporation, Defendant Insurer, based on a contractor's liability policy issued by defendant. The trial court sitting without a jury held the loss was not covered by the policy and plaintiff has appealed from the judgment in favor of defendant.

The facts are undisputed. Plaintiff was employed as a subcontractor to install certain machinery in the Caterpillar Tractor Plant. As a part of such installation the plaintiff was required to ground the electrical system by attaching copper wire to a large diameter water pipe system which was then being constructed around the perimeter of the building ten feet below the surface of the ground. Another subcontractor excavated the trench, laid and connected the pipe and then refilled the trench. Plaintiff's men were working in the trench approximately two pipe lengths behind the pipe crew and after the pipe had been laid and connected plaintiff's men attached the copper wire to the pipe by means of brazed connections. In the process the wire and pipe were heated with an acetylene torch using rods and flux. After the connections were made, the pipe crew working behind plaintiff's men filled in the excavation. After eight of such connections had been made and a part of the trench filled in over such connections it was discovered that the pipe had cracked at the point of each of such connections and the pipe subcontractor was required to replace such pipe at a cost of $2,555.94. Plaintiff was of the opinion that its brazing was the cause of the damage and accordingly paid the subcontractor the cost of replacement thereof. Claim was made by plaintiff against defendant for such amount which claim defendant refused to pay and this action resulted.

The insuring agreement admittedly in effect at the time of the loss, obligated the defendant insurer "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident." The policy also provided that it did not apply ". . . to injury to or destruction of . . . property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control, . . . ."

No questions are raised concerning the loss, the insured's responsibility therefore, the amount of damages or the applicability of the insuring agreement in the absence of the exclusionary provision. The sole question presented on this appeal is whether the loss based on the undisputed facts is within the exclusionary provision of the policy. The trial court concluded that the loss was within the exclusion.

Both parties have referred to the familiar rules concerning the application of insurance policy provisions. They need not be restated.

The exclusionary provision under consideration is not uncommon and we have been referred to many cases (only one from Illinois, Maryland Cas. Co. v. Holmsgaard, 10 Ill App2d 1, 133 NE2d 910) in which a similar or identical provision has been considered with respect to a variety of factual situations. See 62 ALR2d 1242 for a collection of cases considering such exclusionary provision.

In reviewing the cases relied upon by the parties it appears that the courts have recognized that the application of the exclusionary provision is not completely harmonious. Black's Law Dictionary, 461, 4th ed 1957, defines "custody" as "The immediate charge and control and not the final and absolute control of ownership implying responsibility for the protection and preservation of the thing in custody." In 12 Couch Insurance, 2nd ed 1964, it is stated in section 44:426 that "The great majority of cases support the view that the exception clause relating to property in the care, custody or control of the insured refers to possessory handling of the property as distinguished from proprietary control." The courts have consistently held that such exclusion is applicable where the possessory interest between the insured and the property damaged is based on some legally recognized relationship thereto such as bailment. In Maryland Cas. Co. v. Holmsgaard, 10 Ill App2d 1, 133 NE2d 910, the only Illinois

case involving a similar or identical exclusionary provision, the court held the loss excluded where it appeared that the owner of an automobile had left the automobile with a welding shop operator for the purpose of having a trailer hitch welded on the bumper, the automobile being destroyed by fire caused by the welding. Although the courts have had no difficulty in holding the loss excluded where a bailment existed, both the Maryland Casualty case as well as most cases where the matter has been discussed, do not limit the exclusionary provision to those cases where such legal relationship exists. In P & M Stone Co. v. Hartford Accident & Indemnity Co., 251 Iowa 243, 100 NW2d 28 (1959), (involving loss to a bulldozer) and Christ v. Potomac Ins. Co., 413 P2d 407 (1966), (involving damage to a mobile shovel loader) relied upon by defendant, the court held the loss excluded where it appeared that such equipment was being operated by an employee of the insured without the consent of either the insured or the owner of the property.

From the foregoing references and cases as well as other cases relied upon by defendant it may be seen that where the property damaged is chattel in nature i. e., movable or capable of being handled, the care, custody or control by the insured which may be found to exist, depends in large measure upon the nature of possession of which such property is susceptible. To be sure this does not mean that the exclusionary provision is limited to chattel property but it does reveal that our concepts of possession of chattel property and hence care, custody or control thereof are not readily applicable where the property damaged is in the nature of real property. This is particularly true where the property damaged is more or less firmly and permanently attached to the real estate. Under such circumstances the insured may be deemed to have temporary or incidental access to the property or limited possession of an area of the property rather than care, custody or control of the property itself.

389

In the following cases the courts have applied the "temporary access" or "limited possession" doctrines and have held that the damaged property was not within the care, custody or control of the insured. In Klapper v. Hanover Ins. Co., 39 Misc2d 215, 240 NYS2d 284, windows were so badly scratched by the insured, a window washing contractor, that they had to be replaced. In Boston Ins. Co. v. Gable, 352 F2d 368, the insured, a painting contractor, gouged and burned the exterior of a house which he had been employed to prepare and paint. In Boswell v. Travelers Indemnity Co., 38 NJ Super 599, 120 A2d 250, damage to two ten-ton heat exchange units resulted from the testing thereof after the insured had replaced and repaired the tubes. In Gibson v. Glen Falls Ins. Co., 241 SC 293, 128 SE2d 157 (1962), the foundations and floor of a swimming pool were damaged by hydrostatic pressure resulting from the drainage of the water from the pool in order that the insured's employees could clean the inside of the pool with muriatic acid. We believe that the reasoning in the foregoing cases is applicable to the facts of this case and requires the conclusion that the plaintiff did not have care, custody or control of the damaged water main. In our view of this case the plaintiff had temporary access to and limited possession of an area of the water main but not care, custody or control of such main the same remaining with the pipe crew which excavated the trench, laid and connected the pipe.

For the foregoing reasons the judgment of the Circuit Court of Peoria County is reversed.

Judgment reversed.

ALLOY, P. J. and SCHEINEMAN, J., concur.