ARRIGO'S FLEET SERVICE, INC. v AETNA LIFE & CASUALTY
COMPANY

1. INSURANCE—CONTRACTS—CONSTRUCTION.

The purpose of insurance is to insure; therefore a policy should not be construed to defeat that objective unless its language requires it.

2. INSURANCE—CONTRACTS—CONSTRUCTION.

Any doubts in the meaning of the terms of an insurance contract are to be resolved against the insurer and in favor of the insured.

3. INSURANCE—CONTRACTS—CONSTRUCTION.

The standard by which any contract of insurance is to be viewed is the understanding of an ordinary person.

4. INSURANCE—CONTRACT—EXCLUSIONARY CLAUSES—CONSTRUCTION.

Exclusionary clauses in insurance policies are to be strictly construed against the insurer.

5. INSURANCE—CONTRACTS—EXCLUSIONARY CLAUSES—AMBIGUOUS PROVISIONS.

A clause in a garageowner's liability insurance policy which excludes coverage of "property in the care, custody or control" of the insured is ambiguous, and is to be strictly construed against the insurer.

6. INSURANCE—CONTRACTS—AMBIGUOUS PROVISIONS—QUESTIONS OF FACT.

Ambiguous language in a contract gives rise to a question of fact wherein the jury must determine the intent of the parties;

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 17 Am Jur 2d, Contracts § 276.
    43 Am Jur 2d, Insurance §§ 258, 271 *et seq.*
[3] 43 Am Jur 2d, Insurance §§ 261, 264.
[4, 5] 44 Am Jur 2d, Insurance §§ 271–279.
[5, 7] 44 Am Jur 2d, Insurance §§ 1422, 1423.
    Scope of clause excluding from contractor's or similar liability policy damage to property in care, custody, or control of insured. 62 ALR2d 1242.
[6] 17 Am Jur 2d, Contracts §§ 244, 245.
    43 Am Jur 2d, Insurance §§ 260, 264.

thus, whether the contents of a trailer, damaged during repair of the trailer, were excluded from coverage by a garageowner's liability insurance policy was a question for the jury where the language of the policy's exclusionary clause was ambiguous. ·

7. INSURANCE—CONTRACTS—EXCLUSIONARY PROVISIONS—CONSTRUCTION.

The most valuable criterion for determining whether a policy of insurance on the liability of contractors, which excludes coverage of property "in the care, custody or control" of the insured, should include liability for such property if damaged, is to distinguish whether the damaged property is necessary to the insured's work or merely incidental to it; if the property is essential to the work being performed, it is within the "care, custody or control" of the insured and excluded, but if the property is not essential to the work it is not within the exclusion.

Appeal from Kent, Stuart Hoffius, J. Submitted Division 3 June 7, 1974, at Grand Rapids. (Docket No. 18549.) Decided July 24, 1974. Leave to appeal denied, 392 Mich 812.

Complaint by Arrigo's Fleet Service, Inc. against Aetna Life & Casualty Company seeking payment under a policy of insurance. Judgment for defendant. Plaintiff appeals. Reversed and remanded for further proceedings.

*Garlington & Smiley,* for plaintiff.

*Cholette, Perkins & Buchanan* (by *Grant J. Gruel),* for defendant.

Before: HOLBROOK, P. J., and T. M. BURNS and R. L. SMITH,* JJ.

HOLBROOK, P. J. Plaintiff is in the business of repairing trailers of large cargo trucks. On April 1, 1971, such a unit, owned by North American Van Lines, was brought to plaintiff's place of business.

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

On the day before, the unit had been repaired for a broken hanger assembly connecting the axle to the body of the trailer, in Chicago, Illinois. The trailer was locked and the keys were in the possession of the driver. There were three locks on the trailer. An employee of the plaintiff began welding. Shortly thereafter, the driver left plaintiff's premises for coffee. Employees of plaintiff discovered smoke coming from the trailer. After trying to get into the trailer, but being unable to do so because of the fact that it was locked, they took a cutting torch and cut off a lock. After the first lock was cut out, they noticed that there were straps behind and were unable to gain access at that point. Therefore, they were forced to use a cutting torch on the rear doors of the trailer. As a result of this fire, the merchandise in the trailer was damaged. An action (Kent County Circuit Court #13813) was instituted by North American Van Lines, as subrogee of Ted and Virginia Zyck, against plaintiff in this action. North American prayed for judgment in the amount of $14,000 plus interest and costs. Plaintiff then filed the present action seeking a declaratory judgment that the defendant should defend in the action instituted by North American and that the defendant should be liable for any judgment which might be rendered against plaintiff.[1]

Plaintiff had purchased a policy of garage insurance from defendant which stated:

"The *company* will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of

---

[1] At the outset, we note that it is unclear as to whether, even if the insurance company is not liable for a judgment on the basis of the exclusion, there is a duty to defend. The policy states only that "[t]his *insurance* does not apply * * * " (emphasis supplied), and does not delineate the exclusion in reference to the duty to defend.

*"bodily injury* or

*"property damage* to which this insurance applies, caused by an *occurrence* and arising out of *garage operations,* including only the *automobile hazard* for which insurance is afforded as indicated in the declarations, and the *company* shall have the right and duty to defend any suit against the *insured* seeking *damages* on account of such *bodily injury* or *property damage,* even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the *company* shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the *company's* liability has been exhausted by payment of judgments or settlements."

Thereinafter, a number of exclusions were set out. Exclusion (g) provided that: [the insurance did not apply]

"to *property damage* to * * *

"(2) property in the care, custody or control of or being transported by the *insured* or property as to which the *insured* is for any purpose exercising physical control; * * * "[2]

Defendant denies coverage on the basis of this exclusion.

Plaintiff had demanded a jury trial. It contended that the only care, custody and control that they had was over the trailer itself, *i.e.,* not the contents within.[3] Defendant maintained that coverage

[2] The clause is commonly found in garage liability policies and contractor's liability policies. *See,* for instance, *Leiter Electric Co v Bituminous Casualty Corp,* 99 Ill App 2d 386, 388; 241 NE2d 325, 327 (1968); and *Bituminous Casualty Corp v Chicago, RI & P R Co,* 8 Ill App 3d 172, 174; 289 NE2d 464, 466 (1972). *Generally, see* Anno: *Liability insurance of garages, motor vehicle repair shops and sales agencies, and the like,* 93 ALR2d 1047, 1072.

[3] Any damage which may have occurred to the trailer per se was paid by the insurance company on the basis of a separate clause in the policy which provided for fire and explosion coverage for the loss of an automobile, other than explosion of tires.

was excluded in that the contents were under the physical control of the plaintiff. Defendant moved for summary judgment. The trial court granted a directed verdict (summary judgment). The court ruled that the issue was one for the court's decision ·and not for the jury, as there were no disputed facts and it found no ambiguity. The court relied upon the case of *Appicelli Sales & Service, Inc v Citizens Mut Ins Co,* 40 Mich App 287; 199 NW2d 242 (1972), *lv den* 388 Mich 769 (1972). The court further stated that its determination would allow plaintiff to come to this Court for a ruling on the issue. Thus, we are faced with the determination of whether, as a matter of law, it can be said that on the basis of the exclusion defendant has no duty to defend on plaintiff's behalf or liability for any judgment rendered against plaintiff.

It is axiomatic that the purpose of insurance is to insure. See, for instance, *Goswick v Employer's Casualty Co,* 440 SW2d 287, 289 (Tex, 1969), wherein the Court stated: "[W]e must presume that the objective of the insurance contract is to insure, and we should not construe the policy to defeat that objective unless the language requires it". We are mindful that insurance is vitally affected with the public interest. *Ferguson v Phoenix Assurance Co of New York,* 189 Kan 459, 470; 370 P2d 379, 387; 99 ALR2d 118, 128 (1962).

In *Huron Bowl, Inc v Security Ins Co of New Haven,* 14 Mich App 62, 65; 165 NW2d 265, 266–267 (1968), Judge J. H. GILLIS wrote:

" 'Care and custody' connotes dominion over the property which need not attain actual possession. *Birgbauer v Aetna Casualty & Surety Co,* 251 Mich 614; 232 NW 403 (1930). It does imply, however, some temporary right of dominion over, or charge of the property albeit

under the direction of another. See *Bierman-Danzi Corp v Fireman's Fund Insurance Co,* 115 NYS2d 706 (NY Mun Ct, 1952); *Fox West Coast Theatres, Inc v Union Indemnity Company,* 167 Wash 319; 9 P2d 78 (1932)."[4]

In *Zurich Ins Co v Rombough,* 384 Mich 228, 232–233; 180 NW2d 775, 777 (1970), the Supreme Court quoted with approval language of Justice Tobriner from *Gray v Zurich Ins Co,* 65 Cal 2d 263; 54 Cal Rptr 104; 419 P2d 168 (1966), stating that the principles of interpretation of insurance contracts are contemporarily inherently involved in the doctrine of contracts of adhesion. On such a basis any doubts in the meaning of the terms of an insurance contract are to be resolved against the insurer and in favor of the insured.[5] The standard by which any contract of insurance is to be viewed

[4] It is generally recognized that the clause in question refers to possessory handling of property as distinguished from proprietary control. 44 Am Jur 2d, Insurance, § 1423, p 279; *see, also, Condenser Service & Engineering Co, v American Mutual Liability Ins Co,* 58 NJ Super 179, 184; 155 A2d 789, 792 (1959); *Sanco Co v Employers Mutual Liability Ins Co of Wisconsin,* 102 NH 253; 154 A2d 454 (1959); *Maryland Casualty Co v Holmsgaard,* 10 Ill App 2d 1, 9; 133 NE2d 910, 914 (1956); and *Crist v Potomac Ins Co,* 243 Or 254, 261; 413 P2d 407, 411 (1966), wherein the Court held that control refers only to the physical fact of possession and does not contemplate proprietary control or ownership and that for the insured to be "in charge of" the property damaged requires more than mere physical possession in that the placing of responsibility is connoted.

[5] It is the general rule that if an insurance policy calls for construction, it is to be construed liberally in favor of the insured and strictly against the insurer. Authority for this is far too numerous for complete recitation; the following is demonstrative: *Francis v Scheper,* 326 Mich 441, 448; 40 NW2d 214, 217 (1949); *Leski v State Farm Mutual Automobile Ins Co,* 367 Mich 560, 567; 116 NW2d 718, 721 (1962); *Hawkeye Security Ins Co v Shields,* 31 Mich App 649, 654; 187 NW2d 894, 898 (1971); *Mayer v Credit Life Ins Co,* 42 Mich App 648, 650; 202 NW2d 521, 523 (1972); *Wolverine Ins Co v State Automobile Mutual Ins Co of Columbus, Ohio,* 415 F2d 1182, 1184 (CA 6, 1969); *Michigan Mutual Liability Co v Mattox,* 173 So 2d 754, 756 (Fla App, 1965). *See, also,* 14 Michigan Law & Practice, Insurance, § 93, p 71; 3 Williston on Contracts (Rev ed, 1936) § 621, pp 1788–1789; 1 Restatement Contracts, § 236(d), p 328; *cf. Suwyn v Auto-Owners Ins Co,* 15 Mich App 279; 166 NW2d 549 (1968).

is the understanding of an ordinary person.[6] *Michigan Mutual Liability Co v Mesner,* 2 Mich App 350, 353; 139 NW2d 913, 915 (1966). Exclusionary clauses in insurance policies are to be strictly construed against the insurer. *Weaver v Michigan Mutual Liability Co,* 32 Mich App 605, 609; 189 NW2d 116, 118 (1971).

It has been said that the purposes of clauses of this type are to 1) avoid greater moral hazard as far as the insurance company is concerned, and 2) to eliminate the possibility that the insurance company may become the guarantor of the insured's workmanship. *Elcar Mobile Homes, Inc v D K Baxter, Inc,* 66 NJ Super 478, 484; 169 A2d 509, 512 (1961); *Royal Indemnity Co v T B Smith,* 121 Ga App 272, 275; 173 SE2d 738, 740 (1970). We point out that these purposes are well serviced by the language of the clause in that, read literally, it is broad enough and vague enough to be interpreted to exclude almost all instances which the average purchaser of this type of insurance might well expect to be covered.[7]

---

[6] In no small part, this must be derived from the requirement that insurance companies make use of language that is clear and understandable to laymen. *See Century Indemnity Co v Schmick,* 351 Mich 622, 627; 88 NW2d 622, 625 (1958).

[7] Were it not that so many courts, including this Court, notwithstanding their determinations as to the applicability of the clause to the factual contexts of the particular cases, have impliedly assumed the validity of the clause, we would be inclined to find this clause void on the basis of public policy. We would find it to be in disfavor. Further, we note that the burden should be on insurance agents and companies to explain, with specific examples, the import of the clause, *i.e.,* what is covered and what is not covered. While not brought up by this case, we feel that the lack of complete explanation, leaving the implication of full coverage could be found to be against the spirit of MCLA 500.2005; MSA 24.12005. *Cf.* Davis, *Pretrial Discovery of Insurance Coverage,* 16 Wayne L Rev 1047, 1061 (1970), wherein it is asserted:

"A defendant who thinks he has 'full coverage' but learns after an accident that his agent procured only the statutory minimum need not wait for a judgment in excess of the policy limits; he could pursue the agent (generally an employee of the automobile liability insurer

This issue has only been twice previously before this Court. *Anderson v Brown*, 21 Mich App 699; 176 NW2d 457 (1970), involved the construance of the same clause here in question. Plaintiff Anderson was a housing contractor. He had obtained an insurance policy from the Travelers Indemnity Insurance Company for comprehensive general liability protection. While working on the construction of a home, work upon which was being done by the individuals for whom the house was to be constructed, a fire occurred which destroyed the house. The insurance company denied coverage on the grounds that the property was within the care, custody or control of the insured and was property which the insured was exercising physical control over. Litigation by the owners of the home concluded in judgment against plaintiff Anderson. Thereafter, Anderson commenced an action for declaratory judgment which was tried before a jury. Before the close of proofs, however, the trial court granted defendant's motion for a directed verdict, ruling that the language of the policy was clear and unambiguous and excluded coverage. This Court reversed, remanded and wrote:

"Words that are clear in their meaning when standing alone in a contract often give rise to ambiguity when they are applied to a given set of facts, and this ambiguity in turn gives rise to a question of fact. Michigan courts recognize the following rule in regard to ambiguity, 53 Am Jur, Trial, § 269, p 228:

" 'while it is true as a general rule that the construction of written contracts belongs to the court and not the jury, there are nevertheless cases in which the ambiguous nature of the words used or an obscure reference to unexplained circumstances requires that

nowadays) in a separate or third-party action immediately." (fn omitted.)

the interpretation of the language be left to the consideration of the jury for the purpose of carrying into effect the real intention of the parties. It is for the jury to determine what is the agreement of the parties, where there is uncertainty in a written contract because of ambiguity or incompleteness, or technical words or terms of art. Likewise, where the nature of a contract is not clear, its interpretation may become a mixed question of law and fact, based upon the acts of the parties thereunder; and where a written contract has been modified by the practice under it, the question should be submitted to the jury under proper instructions,' "and leave the interpretation of an insurance contract and its applicability to the facts to the jury. *Clark v Hacker,* 345 Mich 751; 76 NW2d 806 (1956); *Barker v Citizens' Mutual Fire-Insurance Co,* 136 Mich 626; 99 NW 866 (1904).

* * *

"[T]he jury could have reasonably concluded, after determining the meaning of the words 'care, custody or control,' that the house was not in the 'care, custody or control' of Anderson at the time of the fire. The meaning of these words gives rise to a question of fact, and that question *should have been submitted to the jury."* (Emphasis supplied.) *Anderson v Brown, supra,* 21 Mich App 703–704; 176 NW2d 459–460.

The other case is *Appicelli Sales, supra,* which was a declaratory judgment action. There, the defendant insurance company denied coverage and the duty to defend in a pending action. Plaintiff had been hired by a third party to unload a mechanical cherry picker from a flatbed trailer. Employees of both plaintiff and the third party were involved in the operation. The third party's employees directed the operation and rendered some physical assistance. The Court there wrote:

"The defendant bases its failure to defend on an exclusionary clause which excludes coverage for 'property in the care, custody or control of or being trans-

ported by the insured *or property as to which the insured is for any purpose exercising physical control'.* The general rule governing this type of clause is stated in Anno: *Liability insurance of garages, motor vehicle repair shops and sales agencies, and the like,* 93 ALR2d 1047, 1072:

" 'Most garage liability policies contain clauses which exclude specifically or qualify the liability coverage provided for certain types of causes or losses. In passing upon these exclusion clauses, the courts have generally applied the rule that if such limitations are not expressed plainly and without ambiguity they will be construed strictly against the insurer and liberally in favor of the insured, in order that the purpose of the insurance will not be defeated. However, if the limitations are plainly expressed, the insurers are entitled to have such limitations construed and enforced as expressed, assuming they are not contrary to law or public policy.'

"After examination of the record we can only conclude that this case falls within the exclusion." (Emphasis in original.) *Appicelli Sales, supra,* 40 Mich App 288–289; 199 NW2d 243.

Without further comment, the majority reversed and remanded the trial court's judgment in favor of plaintiff.[8] While at first blush these two cases may seem inconsistent, one overriding point is manifest, *viz,* that the cases are decided upon the facts, rather than law.[9]

---

[8] In a short opinion, Judge T. M. BURNS dissented in this case, saying:

"In my opinion *physical control* over the machine was being exercised by the owners during the operation since they were at all times directing the unloading. The fact that plaintiff's wrecker was being used does not constitute the *type of control* over the machine which would make the policy's exclusionary clause applicable." (Emphasis supplied.) *Appicelli Sales,* 40 Mich App 289; 199 NW2d 243.

[9] In reviewing numerous cases from other jurisdictions, this may be the only consistency. While many different theories are applied, often to opposite conclusions, a reading of the cases does reveal that all are primarily decided upon each court's determination of the facts. One of the few relatively comprehensive discussions of this clause and its applications is to be found in Anno: *Scope of clause excluding from*

A number of courts have found this clause to be inherently ambiguous. *Boswell v Traveler's Indemnity Co,* 38 NJ Super 599, 607; 120 A2d 250, 254 (1956), wherein the Court said that the words care, custody or control are "words of art"; *Elcar Mobile Homes, supra,* 66 NJ Super 487; 169 A2d 511; *Falls Sheet Metal Works, Inc v US Fidelity & Guaranty Co,* 17 Ohio App 2d 209, 211; 245 NE2d 733, 735 (1969). We agree that the clause is ambiguous. In support, we point out that many different courts, in interpreting this clause, have applied many different tests and come to many different conclusions, and have seemingly always based their determinations on an interpretation of the facts of the particular case.

As the clause is ambiguous, it is to be strictly construed against the insurer.[10] Moreover, ambiguities in insurance policies are to be resolved in favor of coverage. *Connecticut Indemnity Co v Nestor,* 4 Mich App 578, 581; 145 NW2d 399, 401 (1966). Thus, as we have concluded that the question of whether a particular instance is excluded from coverage under this clause is a question of fact, for jury determination, the trial court's decision was improper.

As we find that the law in this area is in a state of uncertainty, we feel it proper to set out certain

---

*contractor's or similar liability policy damage to property in care, custody, or control of insured,* 62 ALR2d 1242, 1244, wherein it is stated:

"Generally speaking, no rule of general application can be deduced from the cases, aside from the rather obvious statement that the general principle that insurance policies, having been prepared by the insurer, must be construed most strongly against it and in favor of the insured, fully applies to the kind of exclusion clause discussed here. It is interesting to note that there is authority to the effect that the exclusion clause is inherently ambiguous and, on the other hand, that the clause is clear and unambiguous." *Cf.* 44 Am Jur 2d, Insurance, § 1423, p 279, fn 14.

[10] *See* fn 5, *supra.*

guidelines by which these cases may be judged in the future.

Certain general principles are set out in the annotation in 62 ALR2d 1242, 1247–1248, which are useful.[11] These principles are:

"(1) Where the *property damaged is merely incidental* to the property upon which the work is being performed by the insured, the damaged property is not considered as in the possessory control of the insured, and a clause excluding from liability damage to property 'in the care, custody, or control of the insured' will not operate to exclude the insurer from liability under the policy.

"(2) Where, however, the *property damaged is under the immediate supervision of the insured and is a necessary element of the work involved,* the damaged property is considered as in the possessory control of the insured, and the exclusionary clause will effectively operate to exclude the insurer from liability under the policy.

"(3) A third principle seems a permissible conclusion from the two other rules: Where the property damaged is in the proprietary[12] control of the insured, whether a necessary element of the work involved or merely incidental thereto, the exclusionary clause will operate to exclude the insurer from liability under the policy."

[11] The annotation points out that a review of the various opinions on this problem did not disclose whether the principles "were consciously applied." 62 ALR2d 1242, 1247.

[12] Black's Law Dictionary (4th ed) defines proprietary as an adjective as: "Belonging to ownership; belonging or pertaining to a proprietor; relating to a certain owner or proprietor."

Webster's Third International Dictionary says:

"1 a: held as the property of a private owner ([proprietary] right of manufacture): relating or belonging to a proprietor ([proprietary] control of mineral resources) ([proprietary] government) b: characteristic of or appropriate to an owner (the lawyers' * * * normal [proprietary] feeling about the law courts—Walter Goodman) 2: made and marketed by a person or persons having the exclusive right to manufacture and sell ([proprietary] baby food) ([proprietary] medicine) 3: privately owned and managed usually without public control or supervision (in the 19th century there were many [proprietary] medical schools in America) ([proprietary] hospital)."

(Footnotes omitted.) (Emphasis supplied.) 62 ALR2d 1242, 1247–1248.

We feel that distinguishing whether the damaged property is necessary to the insured's work or merely incidental thereto is the most valuable criterion.[13] This approach has been used in *Maryland Casualty Co v Hopper*, 237 SW2d 411 (Tex Civ App, 1950); *Condenser Service & Engineering Co v American Mutual Liability Ins Co*, 58 NJ Super 179; 155 A2d 789 (1959); *Goswick, supra*. In *Meiser v Aetna Casualty & Surety Co*, 8 Wis 2d 233, 240; 98 NW2d 919, 923 (1959), the Supreme Court of Wisconsin said that: "[t]he policy exclusion is meant to apply to the essential work being done by the insured * * * ". See also 44 Am Jur 2d, Insurance, § 1423, p 280; and *Thomas W Hooley & Sons v Zurich General Accident & Liability Ins Co, Ltd*, 235 La 289, 295; 103 So 2d 449, 450–451; 67 ALR2d 1078, 1082 (1958). In the case at bar, it is obvious that the contents of the van (which were inaccessible to the insured without destruction of property) were irrelevant to the work the insured was doing.

In *P & M Stone Co, Inc v Hartford Accident & Indemnity Co*, 251 Iowa 243, 249; 100 NW2d 28, 31 (1959), the Court wrote:

"The term 'physical control' is more difficult to define than to understand. An applicable definition of the word physical is 'bodily as contrasted with mental'. One definition of the verb 'control' given by Webster's International Dictionary is: 'To exercise restraining or di-

---

[13] In *Royal Indemnity Co, supra*, 121 Ga App 275; 173 SE2d 740, the Georgia Appellate Court concluded that the better approach is to examine the purposes of the exclusion and to determine if the case at bar is the type of risk against which the insurance company had not calculated its premium. This may indeed be one valuable criterion. It would be well to have the insurance company present testimony on this point.

recting influence over.' The noun 'control' is defined as: 'The act or fact of controlling.' "[14]

In *Falls Sheet Metal Works, supra,* 17 Ohio App 2d 212; 245 NE2d 736, the Court found that the concept of physical control relates to bodily contact with the damaged property. In *Crist v Potomac Insurance Co,* 243 Or 254, 261; 413 P2d 407, 411 (1966), there is the implication that the concept of control requires something more than mere physical possession in that some degree of responsibility must appear.[15] In the present case, it is debatable whether the insured was actually exercising physical control over the contents of the van.

Reversed and remanded for further proceedings. Costs to plaintiff.

All concurred.

---

[14] The ambiguity in the use of "control" in application appears in contrasting various cases. In *S Birch & Sons Construction Co v United Pacific Ins Co,* 52 Wash 2d 350, 352; 324 P2d 1073, 1074 (1958), it appears that the decision is based upon the concept of control and in no small part upon the fact that to have not found that the damaged property was within the plaintiff's control would have left a void in which no one was responsible. However, in *Home Indemnity Co v Fuller,* 427 SW2d 97 (Tex Civ App, 1968), the Court found that at the time of the incident which damaged the property, no one was actually exercising physical control over the property.

[15] *See, also,* fns 4 and 8, *supra.*