NORTHWESTERN NATIONAL INSURANCE COMPANY v
PENNINGTON BROTHERS, INC.

1. INSURANCE—CONTRACTS—LIABILITY POLICY—EXCLUSIONARY
   CLAUSES—CONSTRUCTION.

   The applicability of a clause in a policy of insurance on the
   liability of contractors and garagemen which excludes coverage
   of property in the "care, custody or control * * * [or] for any
   purpose exercising physical control" is a question of fact, not
   law; the clause is inherently ambiguous and thus is to be
   strictly construed against the insurer; the most valuable indi-
   cium of applicability is whether the property damaged was
   necessary to the insured's work or merely incidental, and
   physical control connotes some degree of responsibility.

2. INSURANCE—CONTRACTS—LIABILITY POLICY—EXCLUSIONARY
   CLAUSES—CONSTRUCTION—REAL PROPERTY.

   A trial judge in a suit for construction of a policy of insurance
   between a plaintiff insurance company and an insured defend-
   ant who had contracted with another to clean and gas-free an
   oil tank, where the issue was whether or not the tank was
   under the care, custody, or control of the insured at the time of
   a fire in the tank, erred in failing to determine whether the
   tank was so affixed to the real estate as to have become part of
   it or whether the tank was movable.

3. INSURANCE—CONTRACTS—LIABILITY POLICY—EXCLUSIONARY
   CLAUSES—PROPERTY.

   Property damaged by an insured contractor which is merely
   incidental to the property upon which work is being performed
   by the insured under a policy of liability insurance is not

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 43 Am Jur 2d, Insurance §§ 271–276.

   44 Am Jur 2d, Insurance §§ 1422, 1423.

   Scope of clause excluding from contractor's or similar liability
   policy damage to property in care, custody, or control of insured.
   62 ALR2d 1242.

   Risks covered by contractor's liability policy. 156 ALR 1285.

[5, 6] 63 Am Jur 2d, Property § 31 *et seq.*

considered as in such "care, custody or control" of the insured to be excluded under the exclusionary clause found in the liability policy; but where the damaged property is under the immediate supervision of the insured and is a necessary element of the work involved, it is considered as under the care, custody or control of the insured, and the insurer is not liable.

4. INSURANCE—CONTRACTS—LIABILITY POLICY—EXCLUSIONARY CLAUSES—REAL PROPERTY.

The exclusionary clause of property in the care, custody, or control of an insured which is commonly found in contractors' and garagemen's liability policies has only rarely been applied to realty, and courts have refused to extend the insured's work on a specific item of property to cover the care, custody or control of the building or surrounding area.

5. PROPERTY—REAL PROPERTY—POSSESSION—CONTROL—OCCUPATION.

Possession or control of real property is indicated by an occupation exclusive of the control of anyone else.

6. PROPERTY—CARE—CUSTODY—CONTROL—RIGHT OF ACCESS.

Care, custody or control of property implies more than the mere right of access to it.

Appeal from Muskegon, John H. Piercey, J. Submitted Division 3 June 7, 1974, at Grand Rapids. (Docket No. 18537.) Decided August 14, 1974.

Complaint by Northwestern National Insurance Company against Pennington Brothers, Inc., for construction of a policy of insurance issued by plaintiff to defendant to determine whether an exclusion clause precluded liability on the part of the plaintiff. Judgment for plaintiff. Defendant appeals on leave granted. Reversed and remanded with instructions.

*Landman, Hathaway, Latimer, Clink & Robb* (by *Charles H. Rawlings),* for plaintiff.

*White, Spaniola, Knudsen, Stariha & Potuznik, P. C.* (by *Darrel G. Brown),* for defendant.

Before: Holbrook, P. J., and T. M. Burns and R. L. Smith,* JJ.

Holbrook, P. J. For the purposes of this appeal, the opinion of the trial court will adequately suffice to explain facts of and give background to the case. The case was tried before the trial judge without a jury.

"On November 15, 1969, plaintiff herein, Northwestern National Insurance Company, issued to defendants herein, Pennington Brothers, Inc., its General Liability Policy No. BCP 505680.

"On or about March 13, 1970, the defendant entered into a contract with the Prairie Tank & Construction Company to clean and gas free one cone roof tank located at Covert, Michigan. It was the job of Prairie Tank & Construction Company to cut down the tank with torches and remove it from its location at Covert to another location, and rebuild the tank at the new location. The tank belonged to Lakeside Refining Company of Kalamazoo, Michigan.

"The Prairie Tank & Construction Company would perform its job by cutting the tank into pieces with the welding torches and reassemble it at its new location by welding the tank together again. In order to do this welding the tank must be free of explosive gases. The tank contained several thousand gallons of crude oil. Prairie Tank & Construction Company sub-contracted the job of removing the crude oil to Pennington Brothers, Inc.

"Apparently, several thousand gallons of water was [sic] under the crude oil. To facilitate the removal of all of the contents of the tank it was deemed necessary by Pennington Brothers to cut a section out of the tank 6 feet by 8 feet. Pennington Brothers had removed approximately one-half of the contents of the tank by pumping operations, but in removing the last half of

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

the contents of the tank it would be necessary to hog it out by men carrying 5 gallon buckets.

"When it came time to make the cut by a torch on the side of the tank, Pennington Brothers had no one experienced in making such a cut. Pennington then hired a welder from Prairie Tank & Construction Company by the name of Thomas Croasdale and indicated their willingness to pay for his travel, per diem, and salary.

"On April 24, 1970, Mr. Kenneth Clayton from Pennington Brothers, and Mr. Thomas Croasdale appeared on the job site where the tank was located, and after steaming the inside of the tank and making appropriate tests indicating that it was safe to make the cut, Mr. Croasdale proceeded to cut the section one foot by one foot and later, the section 6 feet by 8 feet which included the one foot cut. After completing the 6 by 8 foot cut the plate which had intended to be cut was still held in place by slag. After attempting to break the plate loose and failing, the torch was again used to cut the slag particles and it was at this time that the gas assembled in the tank ignited, setting fire to the materials located therein. The steam was again induced into the tank putting out the fire but not until the tank was damaged as disclosed by Exhibit 2.

"In due time all of the contents of the tank were removed and the tank was cut down and rebuilt at the new location.

"The Prairie Tank & Construction Company has commenced suit against Pennington Brothers, Inc., in the Federal Court for the Western District of Michigan, Southern Division, to recoup the losses sustained by the fire occasioned by the cut of the 6 by 8 foot plate at the side of the tank.

"The suit in the Circuit Court for the County of Muskegon is by Northwestern National Insurance Company against its insured, Pennington Brothers, Inc., for construction of the policy of insurance in existence between Northwestern National Insurance Company and Pennington Brothers, at the time of the fire, being policy number BCP 505680, attached to the pleadings and the matter to be decided by this court is whether or

not the tank in question was 'under the care, custody, or control, of the insured, or as to which the insured is for any purpose exercising physical control.' The policy of insurance contains an exclusion clause to 'property in the care, custody, or control of the insured or as to which the insured is for any purpose exercising physical control.' It will not, therefore, be necessary for Northwestern National Insurance Company, to defend the Federal District suit between Prairie Tank & Construction Company and Pennington Brothers, Inc., if this court finds that the tank in question was under the control of Pennington Brothers. If it is found that the · tank was not under the control of Pennington Brothers at the time of the fire, it will be necessary for Northwestern National Insurance Company to defend the action in the Federal District Court.

"The parties to this action have presented the case in the following manner: A copy of the insurance policy has been filed with the court together with certain other exhibits consisting of four photographs of the tank in question; the contract between Pennington Brothers and the Prairie Tank & Construction Company; and the depositions of J. Spencer Van Alsburg, Tommy Howard Croasdale, and Kenneth Clayton. The parties have filed briefs with the court.

"The court has carefully reviewed the exhibits offered in evidence, including more than 200 pages of deposition testimony, and has given careful consideration to the briefs submitted by the respective parties. I am led to the conclusion that the tank was under the care, custody, and control of the defendant, Pennington Brothers within the meaning of the exclusionary clause found in the insurance contract. Pennington Brothers were hired by Prairie Tank & Construction Company to remove the contents of the tank consisting primarily of crude oil and several thousand gallons of water lying under the crude oil. Defendant argues that it controlled only two manholes and at most the contents of the tank, but not the entire tank. The fact remains, however, that nothing could be done by Prairie Tank towards the performance of its job which was the dismantling of the tank until it had been emptied nor is it controlling that Thomas Croasdale was normally an

employee of Prairie Tank & Construction Company because on the date in question, for all practical purposes, he had been hired by Pennington Brothers (see page 38 of the deposition of Kenneth Clayton).

"Defendant Pennington Brothers undertook the job of removing the contents of the tank and until such time as the tank was emptied and cleaned it was under their control within the meaning of the policy, and since the accident occurred while under their control, the exclusionary clause of the contract is applicable."

This panel in *Arrigo's Fleet Service, Inc v Aetna Life & Casualty Co,* 54 Mich App 482; 221 NW2d 206 (1974), has recently reviewed this exclusionary clause, which is commonly found in contractor's and garagemen's liability policies, in great depth. We there found that: 1) the applicability of the "care, custody or control * * * [or] for any purpose exercising physical control" exclusion is a question of fact, not law; 2) the clause is inherently ambiguous and thus is to be strictly construed against the insurer; 3) the most valuable indicium of applicability is whether the property damaged was necessary to the insured's work or merely incidental thereto;[1] and, 4) physical control connotes some degree of responsibility.[2] Here, the trial court determined the question on the facts and, without so stating, found the tank to be necessary rather than incidental to the insured's work.

Were it not that the trial court, in its otherwise fine opinion, neglected to determine one necessary issue of fact, we would be constrained to affirm.

[1] This criterion is best explained in *Goswick v Employers' Casualty Co,* 440 SW2d 287 (Tex, 1969); *Boswell v Travelers Indemnity Co,* 38 NJ Super 599; 120 A2d 250 (1956); and *Maryland Casualty Co v Hopper,* 237 SW2d 411 (Tex Civ App, 1950).

[2] This criterion is better explained in *Maryland Casualty, supra; Klapper v Hanover Insurance Co,* 39 Misc 2d 215; 240 NYS2d 284 (1963); *Leiter Electric Co v Bituminous Casualty Corp,* 99 Ill App 2d 386; 241 NE2d 325 (1968); and *Bituminous Casualty Corp v Chicago, R I & P R Co,* 8 Ill App 3d 172; 289 NE2d 464 (1972).

Black's Law Dictionary defines fixture as:

"A chattel attached to realty. Becoming accessory to it and part and parcel of it. * * *

"A thing is deemed to be affixed to land when it is attached to it by roots, imbedded in it, permanently resting upon it, or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws." (Citations omitted.)

It is necessary to determine whether the tank· was so affixed to the real estate as to have become part of it or whether the tank w,as movable. In *Goswick v Employers' Casualty Co,* 440 SW2d 287, 290 (Tex, 1969), the Court said: "Only rarely has the exclusion been applied to realty".

In *Boswell v Travelers Indemnity Co,* 38 NJ Super 599; 120 A2d 250 (1956), the plaintiff was in the business of repairing steam boilers. He contracted to replace all the tubes of two heat exchange units in an office building. After replacement, a hydrostatic test was run. By mistake the water was run through the outer shells of the units rather than the tubes. As a result, one shell cracked from end to end. The Court held the clause inapplicable, relying upon, *inter alia, Maryland Casualty Co v Hopper,* 237 SW2d 411 (Tex Civ App, 1950).

In *Maryland Casualty,* Hopper was an independent contractor who was hired to lay flow lines connecting an oil well to a battery of two 500-barrel capacity oil storage tanks (the oil tank involved in the present case is distinctly larger) and lay a pipeline from the gathering pipeline system to the storage tanks. In the course of this operation a valve to one tank was left open, allowing gas to escape from one tank to the other. At one point, it was necessary to bend a 3-inch pipe to

an angle of 45 degrees—in order to so do, an acetylene torch was used and an explosion resulted which destroyed one of the tanks. The Court found the clause inapplicable and wrote:

"*It was not in the care, custody or control of appellee, but was merely necessary or incidental to his work of laying and connecting the tanks with the well and with the gathering pipe line.* The tanks had been installed by the Mapp Tank Company and were supported by a foundation and an embankment. We understand *they were so firmly attached to the realty as to become a part of it.* Certainly it could not have been contemplated by the owners of the leasehold estate that such real estate should be placed in the care, custody or control of appellee during his operations. He was merely permitted to use the tanks as well as the surface of the leased property for the purpose of accomplishing the work he was employed to do. See *A T Morris & Co v Lumber Mutual Cas Ins Co of New York,* 163 Misc 715; 298 NYS 227 (1937)." *Maryland Casualty, supra,* 237 SW2d 416. (Emphasis supplied.)

In *Goswick, supra,* Leon Goswick was hired to remove a defective pump from an oil well. The pump was at a depth of approximately 6,000 feet and was connected to an activating unit on the surface by rods. The pump was stuck and it was necessary to pull out tubing along with the pump and rods. Gas was thus allowed to escape and an explosion ensued. A settlement was had against Goswick by the well owners, and he sought to recover the expenses from his insurer. The insurer refused on the basis, among others, of an exclusion such as is present in the instant case. The Court wrote:

"The general rule has often been stated to this effect: where the property damaged is merely incidental to the property upon which the work is being performed by the insured, it is not considered as in such 'care, cus-

tody or control' of the insured to be excluded under the policy. Where, however, the damaged property is under the immediate supervision of the insured and is a necessary element of the work involved, it is considered as under the 'care, custody or control' of the insured, and the insurer is not liable. Anno: Liability Insurance —Custody of Insured, 62 ALR2d 1242.

"Goswick had removed rods and tubing from this well and had stacked them on the surface. He was lifting the remainder of the tubing and rods, together with the pump, up the well hole. He was exercising full physical control of those items of property, and the exclusion applies as to them.

"Employers contends that the exclusion applies to all of the damages to the outer casing within the hole and to the blockage of the hole itself which prevented subsequent oil production. The policy does not exclude damages caused *by* (emphasis in original) property in the insured's control. It is immaterial that the tubing which did the damage was in the control of the insured. The question is whether Goswick had the described control of the underground well itself.

"The Supreme Court of Louisiana had before it the case of an insured who was dismantling a statue and its supporting stone column. The base upon which these had rested, and a cast iron urn, were damaged when the column was dropped. Since the granite slab and urn at the base were not the subject of the insured's work and not actually used as equipment by the insured in his work, they were held to be merely incidental and not excluded from policy coverage. *Hooley & Sons v Zurick General Accident & Liability Insurance Co,* 235 La 289; 103 So 2d 449 (1958). The casing and earth wall of Pan American's well are analogous to the supporting base of the statue and column.

"In *Maryland Casualty Co v Hopper,* 237 SW2d 411 (Tex Civ App, 1950, no writ), the insured was constructing lines from an oil well to two storage tanks, and from the tanks to the pipeline gathering system. He failed to close a valve on one of the tanks, and consequently the tank was destroyed by an explosion. Though the tank connection and valves were used for the purpose of accomplishing the work, the court held

that the tanks themselves were incidental to the construction and not within the care, custody or control of the insured.

*"Only rarely has the exclusion been applied to realty, as where the insured was building and installing entire new boilers affixed to the realty. Condenser Service & Engineering Co v American Mutual Liability Insurance Co,* 58 NJ Super 179; 155 A2d 789 (App Div, 1959). *The courts have refused to extend the insured's work on a specific item of property into care, custody or control of the building or surrounding area. Newfoundland American Insurance Co v Kamieniecki,* 104 NH 425; 188 A2d 480 (1963); *Boston Insurance Company v Gable,* 352 F2d 368 (CA 5, 1965).

"Goswick was at the well to replace the pump. To do this, he had to take complete physical control of the rods and tubing. He was not there to operate upon the mineral formations or upon the wall of the well, and he did not. Under the agreed facts of this case, we hold as a matter of law that Goswick was not exercising care, custody or control over Pan American's well so as to bring it within the exclusion." (Emphasis supplied.) *Goswick,* 440 SW2d 290.

In *Klapper v Hanover Insurance Co,* 39 Misc 2d 215; 240 NYS2d 284 (1963), the Hanover Insurance Company told defendant Klapper that they would not defend an action against him for improper work under a contract to clean windows. The New York Court held that the care, custody, control or exercising physical control clause was inapplicable, and wrote:

"For the Court to hold that the windows in question were in the care, custody and control of the plaintiff, who was upon the premises for the purpose of cleaning said windows, is, in the Court's opinion, stretching a point. *Possession or control of real property is indicated by an occupation exclusive of the control of any one else.* Plaintiff and his employees were upon the premises temporarily for the purpose of doing the work, and control of the property remained in the general contrac-

tor or owners. *(Rex Roofing Co, Inc v Lumber Mutual Casualty Insurance Co of New York,* 280 App Div 665; 116 NYS2d 876 [1952]; *General Mutual Insurance Co v Wright,* 7 Misc 2d 331; 161 NYS2d 974 [1957]; *A T Morris & Co, Inc v Lumber Mutual Casualty Insurance Co of New York,* 163 Misc 715; 298 NYS 227 [1937]." (Emphasis supplied.) *Klapper,* 39 Misc 2d 216.

In *Michigan Mutual Liability Co v Mattox,* 173 So 2d 754 (Fla App, 1965), O'Neil Mattox was a subcontractor for electrical work on the municipal civic auditorium in Jacksonville, Florida. At some time after the main switchboard had been completed and turned over to the general contractor, the building's lights went out and several of Mattox's employees went to the switchboard room. One of the employees activated a circuit breaker and an explosion occurred which severely damaged the switchboard. Mattox's insurer denied coverage and the insured brought suit gaining a jury verdict in his favor. The insurer appealed. The Florida District Court of Appeals affirmed the verdict, relying on *Klapper, supra,* and *Elcar Mobile Homes, Inc v D K Baxter, Inc,* 66 NJ Super 478; 169 A2d 509 (1961).

In *Gibson v Glens Falls Insurance Co,* 241 SC 293, 298; 128 SE2d 157, 159–160 (1962), the insured had contracted to clean a swimming pool. The pool was damaged. The insurer refused to pay for the damage on the basis of the care, custody, or control exclusion. The Court found the applicability of the clause to be factual[3] and wrote:

"Under the facts of this case, the plaintiff was not exercising care, custody or control of the swimming pool at the time of the injury. The pool was located on the property of the owner, near his residence. The contract

---

[3] *Cf. Arrigo's Fleet Service, Inc v Aetna Life & Casualty Co,* 54 Mich App 482; 221 NW2d 206 (1974).

of the plaintiff provided only for the cleaning of the inside walls and floor of the pool, and he had access to it for that purpose only. At the time that the pool rose from its foundation, neither the plaintiff nor his employees were on the premises, having ceased their operations several hours before. It is true that the plaintiff intended to return the next day to finish cleaning the pool, but this fact only established his right to access to the pool to finish the cleaning and did not within itself place the pool in his care, custody or control. Care, custody or control of property implies more than the mere right of access to it, which was all that the plaintiff had at the time of the accidental loss."

In *Leiter Electric Co v Bituminous Casualty Corp,* 99 Ill App 2d 386, 389–390; 241 NE2d 325, 327–328 (1968), plaintiff was a subcontractor who was to ground an electrical system by attaching copper wire to a water pipe system which was being constructed ten feet below the ground. The wire was attached by a brazing procedure which involved the use of an acetylene torch. The pipe cracked at the point of each of the connections. Plaintiff felt that the brazing was the cause of the damage and accordingly paid for the damage. Upon claim his insurer refused to pay. The Court wrote:

"*[I]t may be seen that where the property damaged is chattel in nature i.e. movable or capable of being handled, the care, custody or control by the insured which may be found to exist, depends in large measure upon the nature of possession of which such property is susceptible. To be sure this does not mean that the exclusionary provision is limited to chattel property but it does reveal that our concepts of possession of chattel property and hence care, custody or control thereof are not readily applicable where the property damaged is in the nature of real property. This is particularly true where the property damaged is more or less firmly and permanently attached to the real estate. Under such*

circumstances the insured may be deemed to have temporary or incidental access to the property or limited possession of an area of the property rather than care, custody or control of the property itself.

"In the following cases the courts have applied the 'temporary access' or 'limited possession' doctrines and have held that the damaged property was not within the care, custody or control of the insured. In *Klapper v Hanover Insurance Co,* 39 Misc 2d 215; 240 NYS2d 284 (1963), windows were so badly scratched by the insured, a window washing contractor, that they had to be replaced. In *Boston Insurance Co v Gable,* 352 F2d 368 (CA 5, 1965), the insured, a painting contractor, gouged and burned the exterior of a house which he had been employed to prepare and paint. In *Boswell v Travelers Indemnity Co,* 38 NJ Super 599; 120 A2d 250 (1956), damage to two ten ton heat exchange units resulted from the testing thereof after the insured had replaced and repaired the tubes. In *Gibson v Glen [sic] Falls Insurance Co,* 241 SC 293; 128 SE2d 157 (1962), the foundations and floor of a swimming pool were damaged by hydrostatic pressure resulting from the drainage of the water from the pool in order that the insured's employees could clean the inside of the pool with muriatic acid. We believe that the reasoning in the foregoing cases is applicable to the facts of this case and requires the conclusion that the plaintiff did not have care, custody or control of the damaged water main. In our view of this case the plaintiff had temporary access to and limited possession of an area of the water main but not care, custody or control of such main the same remaining with the pipe crew which excavated the trench, laid and connected the pipe."

In *Bituminous Casualty Corp v Chicago, R I & P R Co,* 8 Ill App 3d 172, 174; 289 NE2d 464, 466 (1972), a boxcar had derailed and turned over alongside a railroad track. The car was too heavy to move without being unloaded. Ray Frietsch was engaged to unload the car. Frietsch's foreman was told by railroad personnel to use a welding torch to cut a hole to reach certain items which were

otherwise inaccessible. Sparks started a fire which destroyed most of the boxcar and its contents. The railroad sued Frietsch on the basis of negligence. Bituminous Casualty refused to defend and filed a declaratory judgment action. The Court said:

"Contractors liability policies commonly contain such a clause; there is authority to the effect that the clause is inherently ambiguous, and, on the other hand, that the clause is clear and unambiguous. 62 ALR2d 1242. In two prior cases the clause has been construed in Illinois Courts. In *Maryland Casualty Co v Holmsgaard,* 10 Ill App 2d 1; 133 NE2d 910 (1956), the court held that the carrier was relieved of liability due to a bailment situation. In *Leiter Electric Co v Bituminous Casualty Corp,* 99 Ill App 2d 386; 241 NE2d 325 (1968), this court held the carrier liable where the property damaged was more or less firmly and permanently attached to the real estate. The court said, ' * * * the insured may be deemed to have temporary or incidental access to the property or limited possession of an area of the property rather than care, custody or control of the property itself.'

"Here, the railroad retained the care, custody and control of its own boxcar. It was on its right of way, and while it was a chattel it was certainly immovable at the time of loss. We believe that in this case the insured only had temporary access to the property rather than the care, custody or control of the property itself."

Reversed and remanded for further proceedings, including the determination whether or not the tank was a part of the realty, so as to come within the pertinent herein cited cases. Costs to defendant.

All concurred.