Leon **GOSWICK**, Appellant,

v.

**EMPLOYERS' CASUALTY COMPANY,**
**Appellee.**

**No. 4234.**

Court of Civil Appeals of Texas.

Eastland.

May 24, 1968.

Rehearing Denied June 14, 1968.

Nunn, Griggs & Beall, Charles R. Griggs, Sweetwater, for appellant.

McMahon, Smart, Sprain, Wilson & Camp, Marvin S. Sprain, Abilene, for appellee.

COLLINGS, Justice.

Leon Goswick brought this suit against Employers' Casualty Company for an alleged breach of contract by the defendant in failing and refusing to assume the defense of and discharge the liability of plaintiff to a third party in an action for tort. The contract which plaintiff alleged to have been breached was a policy of comprehensive general liability insurance which was in effect at the time the claim of the third party came into being. The trial was to the court without a jury upon an agreed statement of facts and the deposition of Leon Goswick. The defense plead by Employers' Casualty Company was that it was not liable because of two exclusionary provisions in the policy. Judgment was rendered for the defendant and Goswick has appealed.

The undisputed facts show that appellant, Leon Goswick, was engaged in the business of oil well servicing and that appellee, Employers' Casualty Company, was engaged in writing and issuing policies of liability insurance. On March 10, 1965, appellee issued its comprehensive general liability policy to appellant extending coverage to him for the period of time during which the third party action arose. Such insurance policy was in full force and effect at all times material hereto. The policy describes the business of Goswick the named insured, as "oil well servicing" and undertakes to pay on behalf of the insured all damages incurred by him by reason of injury to or destruction of property, including the loss of use thereof caused by accident to the extent of $100,000.00 for each accident.

On or about October 28, 1965, appellant, Goswick, was hired as an independent contractor by Pan American Petroleum Corporation in connection with operations to be performed by appellant upon a producing oil well owned by such corporation in Coke County. Appellant undertook to change an underground pump used in connection with the operation of the oil well. It was contemplated that appellant would take the necessary equipment and workmen to the location of the well and do what was necessary to remove the old pump and install a new one. The operation would normally involve the removal from the well of the sucker rods. The rods as removed from the well would be stacked. The old pump would be removed. A new pump would be substituted therefor, and it and all the rods replaced in the well. The well in question had been drilled to a depth of about 6,000 feet.

Appellant brought special equipment to the lease to do the work. When he attempted to remove the pump it was discovered that the pump was stuck, and that the rods could not be removed without removing the tubing. Appellant's employees thereupon began to unscrew and remove the rods and to then pull the tubing from the hole. During this operation the well was making gas which was escaping at the well head. When about 160 rods had been pulled from the well and stacked or hung in appellant's rig and about 12 joints of tubing had been removed a fire ignited at the well head. No employee or agent of Pan American Petroleum Corporation participated in this work or was present at the time of the fire.

Appellant's employees attempted to extinguish the fire but were not immediately successful. About 200 joints of tubing were still in the well and their entire weight was suspended from elevators being used by appellant's workmen. The heat of the fire and the weight of the tubing caused the tubing to part at the top of the blowout preventer, and the tubing dropped back into the well causing considerable damage. As a result of the fire Pan American Petroleum Corporation suffered damages to its well, the rods and tubing therein, the rods and tubing which had been removed from the well, and incurred expenses in an effort to extinguish the fire and repair the damage done by the fire. Eventually the well had to be abandoned.

Pan American then brought suit against Goswick for its damages in the alleged amount of $34,764.41, and Goswick was served with citation. He presented the summons to appellee insurance company and requested that it defend such litigation. Goswick was advised by appellee that the insurance policy did not cover an accident of the type made the basis of Pan American's cause of action and appellee refused to assume the defense of the suit or accept liability thereon.

Goswick employed an attorney in connection with the defense of the Pan American litigation and necessarily incurred reasonable attorneys' fees and expenses in the amount of $2,995.28. At the trial of the case after a jury was empaneled and evidence heard, the parties compromised the controversy and an agreed judgment was entered against appellant Goswick for $12,000.00 and costs.

In the instant case appellee insurance company raised two affirmative defenses in its pleadings, contending that it was not liable to appellant because of two exclusionary provisions in the policy designated as the "underground damage" exclusion and the "care, custody and control" exception provided therein.

Under Coverage B—Property Damage Liability, appellee by the policy obligated itself "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

The first exclusionary provision relied upon by appellee is as follows:

EXCLUSIONS

"This policy does not apply:
* * * (h) Under Coverage B, Property Damage Liability to injury to or destruction of * * *

(3) * * * property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control."

The second exclusion in the policy relied upon by appellee is as follows:

"EXCLUSION OF COVERAGE FOR LIABILITY RESULTING FROM UNDERGROUND DAMAGE

It is agreed that with respect to the operations described in this endorsement, including such operations performed for the named insured by independent contractor or their subcontractors:

1. Such insurance as is afforded for Property Damage Liability * * * such insurance as is afforded by such endorsement for Contractual Property Damage Liability, does not apply:

(a) to injury to or destruction of underground property;

(b) to the increased cost of reducing any underground property to physical possession above the surface of the earth, or to the expense incurred or rendered necessary to prevent or minimize loss of or damage to property resulting from acts or omissions causing underground damage."

"DESCRIPTION OF OPERATIONS
Gas Lease Operators—Natural Gas—All Operations

Gasoline Recovery—from Casinghead or Natural Gas

*Oil Lease Operators—All Operations* (Emphasis ours)

Oil or Gas Well Shooting

Oil or Gas Wells—Cleaning or Swabbing —By Contractors

Oil or Gas Wells—Drilling or Redrilling, Installation or Recovery of Casing."

In appellant's first point it is contended that the court erred in holding appellee was relieved from liability by the "underground damage clause" of the insurance contract. Appellant asserts the record shows conclusively that the policy was in full force and effect at all times material, that a fire occurred which resulted in damage to property belonging to Pan American Petroleum Corporation and that appellant was sued in tort and held liable for the damages alleged to have been caused by negligence on the part of appellant and his employees.

Appellant recognizes that the policy provides for certain exclusions of coverage for liability from underground damage. Appellant contends, however, that such exclusions are by the terms of the endorsement ineffective except as to certain specific and named operations set out under the heading "description of operations." Appellant asserts that he was not at the time of the fire engaged in any operation coming within the excluded categories as above set out. The point is not well taken. The "operation" which is here applicable and in which appellant was engaged on the occasion in question was that of "Oil Lease Operators—All Operations." It is true that appellant was not himself an oil lease operator. His business was that of oil well servicing. Pan American Petroleum Corporation was an oil lease operator and the work which appellant was doing on

the well at the time of the fire was for Pan American and was a part of Pan American's operation of the lease. "All" the operations of an oil lease operator are specifically included in the exclusion.

It is held that the terms of a policy must be interpreted in the light of common sense. Hall v. Mutual Benefit Health & Accident Ass'n., 220 S.W.2d 934, (Tex.Ct.Civ.App., 1949, writ ref.); Aetna Life Insurance Co. v. Reed, 151 Tex. 396, 251 S.W.2d 150, (1952). Common sense indicates that the exclusion from liability for all "operations" of the oil operator as to underground damage applies to oil well service contractors who perform such operations for the oil lease operator. Appellant in servicing the well in question and removing the pump for Pan American was performing some of the operations of that oil lease operator. Such operations are included in the "underground exclusion" endorsement and the court properly relieved appellee from liability because of injury to or destruction of underground property and rendered judgment on that basis. The record shows that the bulk of the damages was to underground property, and expense incurred in an effort to prevent or minimize damage resulting from acts causing underground damage.

In appellant's second point it is contended that the court erred in allowing appellee to escape liability by reason of the "care, custody and control" clause of the insurance contract. Appellant points out that the contract, which was prepared by appellee, recited that appellant was engaged in the business of oil well servicing as an independent contractor and in return for stated premiums fixed on that basis agreed to pay insured all sums which the insured should become obligated to pay as damages because of injury to or destruction of property caused by accident; that he was hired by Pan American to do work upon specific property, that is, upon the tubing, rods and the pump in a produc-

ing oil well; that the bulk of such claimed expenses was not damages to specific property upon which appellant was performing services but was for losses incurred in fighting a fire and in attempting to put a producing well back in production; that the loss attributable to the tubing, rods and pump upon which appellant was working at the time of the fire was a small percent of the total damage claimed by Pan American. Thus, the claim against appellant included and was principally for damage to the well, itself, which was a part of the realty. Appellant asserts that he never had the "care, custody and control" of such realty, but was merely at the location of the well for the purpose of doing the work he had been hired to do on the rods, tubing and pump.

As already noted the bulk of the damages in question was to "underground property" and appellee was by the terms of the policy not liable therefor. The remaining damaged property was rods and tubing which had either been removed from the well and stacked or hung in appellant's rig or was still in the well and in the process of being removed therefrom. The work was being done by appellant and his employees. No employee of Pan American was on the premises. Unquestionably appellant had some kind of possessory control over such tubing and rods. By the weight of authority a provision in a liability policy, excluding from coverage liability for damage to property "in the care, custody or control of the insured" is construed as contemplating possessory handling of the property. 62 A.L.R.2d 1245 and cases cited; Maryland Casualty Co. v. Hopper, 237 S.W.2d 411, (Tex.Ct.Civ. App., 1950, no writ history). Certainly, appellant was, for the purpose of performing the work he had been hired to do, "exercising physical control" over the property as contemplated by the exclusionary provision. Appellant's contention that the court erred in allowing appellee to escape liability by reason of such exclusion-

ary provision is overruled. International Derrick & Equipment Company v. Buxbaum, 3 Cir., 240 F.2d 536, 62 A.L.R.2d 1237, (U.S.Ct. of App., 1957).

The judgment is affirmed.