**Leon GOSWICK d/b/a Leon Goswick and Company, Petitioner,**

v.

**EMPLOYERS' CASUALTY COMPANY, Respondent.**

No. B–1008.

Supreme Court of Texas.

April 16, 1969.

Rehearing Denied May 28, 1969.

Nunn, Griggs & Beall, Charles R. Griggs, Sweetwater, for petitioner.

McMahon, Smart, Sprain, Wilson & Camp, Abilene, Graves, Dougherty, Gee, Hearon, Moody & Garwood, Dan Moody, Jr., Austin, for respondent.

REAVLEY, Justice.

Leon Goswick was removing a defective pump from the hole of an oil well owned by

a third party when a damaging fire occurred. Employers' Casualty Company denied coverage under his liability insurance policy; so Goswick settled with the well owner and brought this suit against Employers. Goswick has lost in both the trial court and the Court of Civil Appeals, the latter court saying that the loss was excluded by the policy either as underground damage or as property under the care, custody or control of the insured. 429 S.W.2d 166. We hold that damages to the casing and hole of the oil well were not excluded from the policy coverage, and judgment is rendered for Goswick to that extent.

The facts are not disputed. Goswick was in the oil well servicing business, and on October 28, 1965, was called by Pan American Petroleum Corporation to change the underground pump on one of its wells. The pump was at the bottom of the well hole, about 6,000 feet deep, and was connected to the activating unit on the surface by rods. Ordinarily, the procedure would only require Goswick's employees to pull out the rods and pump, through the tubing (2⅜ inches in diameter) which is at the center of the well hole, then replace the pump at the end of the rod connections and lower it back into the well. But, as sometimes happens, the pump was stuck and would not come up through the tubing. It became necessary to pull the tubing out of the hole together with the rods and pump. This opened the bore for the escape of gas, and the gas was ignited midway during the lifting operation. The most serious destruction was caused by the tubing within the well dropping back to the bottom of the hole and so damaging the interior hole and casing that Pan American was finally forced to abandon the well.

Pan American brought suit against Goswick for its damages in the amount of $34,764.41. Employers refused to defend the suit and denied all coverage. The suit with Pan American was finally settled at an expense to Goswick of $15,114.50 plus attorneys fees and expenses in the amount of $2,995.28. Goswick seeks to recover the total of these expenses from Employers.

Employers' defense is based upon two exclusionary provisions in its policy issued to Goswick. Both provisions apply to the policy's "Coverage B" which obligated the company to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

## UNDERGROUND DAMAGE EXCLUSION

The policy provided as follows:

### "EXCLUSION OF COVERAGE FOR LIABILITY RESULTING FROM UNDERGROUND DAMAGE

It is agreed that with respect to the operations described in this endorsement, including such operations performed for the named insured by independent contractors or their subcontractors:

1. Such insurance as is afforded for Property Damage Liability * * * does not apply:

(a) to injury to or destruction of underground property;

(b) to the increased cost of reducing any underground property to physical possession above the surface of the earth, or to the expense incurred or rendered necessary to prevent or minimize loss of or damage to property resulting from acts or omissions causing underground damage.

2. The term "underground property", as used in this endorsement, means oil, gas, water or other mineral substances, * * *, which, at the time of the act or omission causing loss of, injury to or destruction of such substance, * * *, has not been reduced to physical possession above the earth's surface; such term also includes any well, hole, formation, strata or area beneath the surface of the earth in or through, which exploration for or production of any such sub-

stance is carried on, or any casing, pipe, bit, tool, pump, or other drilling or well servicing machinery or equipment which is located in any such well or hole beneath the earth's surface at the time of the accident causing injury or destruction."

"DESCRIPTION OF OPERATIONS

Gas Lease Operators—natural gas—all operations

Gasoline Recovery—from casinghead or natural gas

Oil Lease Operators—all operations

Oil or Gas Well Shooting

Oil or Gas Wells—cleaning or swabbing —by contractors

Oil or Gas Wells—drilling or redrilling, installation or recovery of casing."

█ In order for the exclusion to apply, the accident must have occurred "with respect to the operations described." None of the operations listed expressly cover an independent contractor doing what Goswick was doing in this instance. But Employers contends, and the Court of Civil Appeals held, that this description applies: "Oil Lease Operators—all operations." Goswick was not an oil lease operator, but it is reasoned that because he changed the underground pump for the operator, Goswick was within the operations excluded. The description is thus expanded from the operations of the oil lease operator to include the operations of anyone working for the operator. This is not what the language of the policy says, and we see no reason to expand it.

If the insurance company had intended to exclude from coverage the underground damage resulting from operations performed by an independent contractor, it could have so provided. One of the described operations expressly includes contractors ("cleaning or swabbing"). If the description of the operations of the lease operators is to include all performance by contractors, there would be no need to include "by contractors" in this description relating to cleaning or swabbing of oil and gas wells.

█ The insurance policy shows that Goswick's business protected by this insurance coverage was "oil well servicing." The objective of the insurance contract was to protect Goswick against liability growing out of his work on oil wells operated by others. If no underground damage was to be covered by this policy, Goswick was unprotected against his most common and most serious risks. If the policy had expressly excluded all underground damage in his operation, it would have to be given effect. But we must presume that the objective of the insurance contract is to insure, and we should not construe the policy to defeat that objective unless the language requires it.

CARE, CUSTODY OR CONTROL EXCLUSION

The second exclusion relied upon by Employers provides as follows: "This policy does not apply:

* * * (h) Under coverage B to injury to or destruction of * * *

3. * * * property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control."

This is the language of the traditional manufacturers' and contractors' comprehensive liability policy form. If the insured under such a policy is repairing or installing item #1 adjacent to item #2 and within the premises of a building, when his negligence causes damage to items #1 and #2, as well as to the building, the exclusion denies coverage only as to that property damaged which was within his possessory control. The cases have limited this "control" to the particular object of the insured's work, usually personalty, and to other property which he totally and physically manipulates. Item #2 may be connected to item #1, and the insured may

change the connection or control a valve on item #2, but it does not follow that #2 is within the meaning of "control" in this exclusion as traditionally construed by the courts.

■■ The general rule has often been stated to this effect: where the property damaged is merely incidental to the property upon which the work is being performed by the insured, it is not considered as in such "care, custody or control" of the insured to be excluded under the policy. Where, however, the damaged property is under the immediate supervision of the insured and is a necessary element of the work involved, it is considered as under the "care, custody or control" of the insured, and the insurer is not liable. Anno: Liability Insurance—Custody of Insured, 62 A.L.R.2d 1242.

■ Goswick had removed rods and tubing from this well and had stacked them on the surface. He was lifting the remainder of the tubing and rods, together with the pump, up the well hole. He was exercising full physical control of those items of property, and the exclusion applies as to them.

Employers contends that the exclusion applies to all of the damages to the outer casing within the hole and to the blockage of the hole itself which prevented subsequent oil production. The policy does not exclude damages caused *by* property in the insured's control. It is immaterial that the tubing which did the damage was in the control of the insured. The question is whether Goswick had the described control of the underground well itself.

The Supreme Court of Louisiana had before it the case of an insured who was dismantling a statue and its supporting stone column. The base upon which these had rested, and a cast iron urn, were damaged when the column was dropped. Since the granite slab and urn at the base were not the subject of the insured's work and not actually used as equipment by the insured in his work, they were held to be merely incidental and not excluded from policy coverage. Hooley & Sons v. Zurich General Accident and Liability Insurance Co., 235 La. 289, 103 So.2d 449 (1958). The casing and earth wall of Pan American's well are analogous to the supporting base of the statue and column.

In Maryland Casualty Co. v. Hopper, 237 S.W.2d 411 (Tex.Civ.App.1950, no writ), the insured was constructing lines from an oil well to two storage tanks, and from the tanks to the pipeline gathering system. He failed to close a valve on one of the tanks, and consequently the tank was destroyed by an explosion. Though the tank connection and valves were used for the purpose of accomplishing the work, the court held that the tanks themselves were incidental to the construction and not within the care, custody or control of the insured.

Only rarely has the exclusion been applied to realty, as where the insured was building and installing entire new boilers affixed to the realty. Condenser Service & Engineering Co. v. American Mutual Liability Insurance Co., 58 N.J.Super. 179, 155 A.2d 789 (App.Div., 1959). The courts have refused to extend the insured's work on a specific item of property into care, custody or control of the building or surrounding area. Newfoundland American Insurance Co. v. Kamieniecki, 104 N.H. 425, 188 A.2d 480 (1963); Boston Insurance Company v. Gable, 352 F.2d 368 (5th Cir. 1965).

■ Goswick was at the well to replace the pump. To do this, he had to take complete physical control of the rods and tubing. He was not there to operate upon the mineral formations or upon the wall of the well, and he did not. Under the agreed facts of this case, we hold as a matter of law that Goswick was not exercising care, custody or control over Pan American's well so as to bring it within the exclusion.

■ It follows that Employers was obligated under the terms of the policy to defend Goswick against Pan American's

suit and to assume liability for the damage to the well itself. Employers is not liable, as has been indicated, for the value of the rods, tubing and pump. Under the agreed facts those items were valued at $4,462.31 out of the total amount of $34,764.41 for which Pan American sued Goswick. That suit was settled for the equivalent of $15,-114.50. Goswick should recover that portion of the settlement represented by damage other than to the rods, tubing and pump, which amount is $13,174.50. In addition, the parties have agreed that Goswick incurred a reasonable legal expense of $2,995.28 in defending against Pan American's suit. Employers, having wrongfully refused to conduct that defense, is liable for the expense thereof.

The judgments below are reversed and judgment is rendered here for petitioner Leon Goswick against respondent Employers' Casualty Company in the amount of $16,169.78, with interest beginning on November 22, 1967.