**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 95-11177

SNYDERGENERAL CORP.,

Plaintiff-Appellant,

versus

CENTURY INDEMNITY CO.,

Defendant-Appellee.

Appeal from the United States District Court
For the Northern District of Texas

May 19, 1997

Before POLITZ, Chief Judge, SMITH and DUHÉ, Circuit Judges.

POLITZ, Chief Judge:

In this insurance coverage dispute, SnyderGeneral Corporation appeals an adverse summary judgment in favor of its insurer, Century Indemnity Company. Concluding that environmental cleanup costs qualify as damages under the applicable insurance policy, we affirm in part and vacate in part the district court's grant of summary judgment, and remand for further proceedings consistent herewith.

## BACKGROUND

In 1982 SnyderGeneral purchased the assets of the Climate Control Division of The Singer Company. Included in this purchase was a manufacturing facility

located in Wilmington, North Carolina. SnyderGeneral manufactured air conditioning and heating equipment at the Wilmington facility from 1982 until it sold the facility in 1988.[1] The manufacturing process required the use of the industrial degreasing solvent trichloroethane ("TCA") and thousands of gallons of groundwater.

In 1983 approximately 500 gallons of TCA spilled from an above-ground storage tank at the Wilmington facility. SnyderGeneral reported the spill to North Carolina environmental authorities and cleaned it up to their satisfaction. In 1988 an investigation revealed the presence of additional TCA in the groundwater at the Wilmington facility. SnyderGeneral undertook the task of cleaning up the contamination and, to date, has spent approximately $2,000,000 toward that goal.

At the time of the 1983 spill, SnyderGeneral had two comprehensive general liability insurance policies. The first, with Commercial Union Insurance Company, provided $300,000 of primary coverage. The second, with Century Indemnity Company, provided umbrella coverage up to $25,000,000. When the additional TCA contamination was discovered in 1988, SnyderGeneral notified both insurance companies of its claim for reimbursement for its expenses in conjunction with the TCA contamination. Specifically, SynderGeneral called upon Century to pay the expenses it had incurred in excess of its primary insurance. Century denied coverage and SnyderGeneral filed suit in Texas state court alleging breach of

---

[1]SnyderGeneral sold the Wilmington facility to Heatcraft, Inc., which declined to assume liability for the costs of investigating and cleaning up environmental contamination at the facility. SnyderGeneral retained responsibility for that liability.

contract and of the duty of good faith and fair dealing in violation of the Texas Insurance Code.

Century removed the case to federal court and moved for summary judgment on the grounds that either the pollution exclusion clause or the care, custody or control exclusion clause in its policy precluded recovery by SnyderGeneral or, in the alternative, that environmental cleanup costs did not constitute damages under the policy. The district court denied Century summary judgment on the first two grounds but granted it on the third. The court concluded that environmental cleanup costs resemble restitution or reimbursement and are not compensation for a traditional legal injury; therefore, such costs did not qualify as damages under Century's policy. Century, therefore, was deemed justified in refusing to reimburse SnyderGeneral for the expenses it had incurred in cleaning up the TCA contamination at the Wilmington facility. SnyderGeneral timely appealed.

**ANALYSIS**

We review a district court's grant of summary judgment *de novo*, applying the same standards as those applied by the district court.[2] Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.*

The Century policy provides indemnity for:

---

[2]*Duhon v. Mobil Oil Corp.,* 12 F.3d 55 (5th Cir. 1994).

all sums which [SnyderGeneral] shall be obligated to pay by reason of liability. . .imposed upon [SnyderGeneral] by law. . .for **damages**. . .on account of. . .property damage. . .caused by or arising out of an occurrence occurring anywhere in the world. (Emphasis added.)

Century contended, and the district court agreed, that the term damages in its policy referred to the technical distinction between legal damages and equitable relief. Consequently, SnyderGeneral's environmental cleanup costs, which the court characterized as restitution or reimbursement, did not qualify as damages.

An intervening decision by this court is dispositive of the issue presented herein. In *Bituminous Casualty Corp. v. Vacuum Tanks, Inc.*,[3] an insurer contended that it did not have a duty to defend its insured in a suit by the federal government under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA").[4] In that action the government sued the insured for expenses incurred in cleaning up environmental contamination at a facility where the insured delivered hazardous waste. The insurer contended that such cleanup costs constituted economic injury and, as such, did not qualify as damages under its policy.[5] We held, however, that environmental cleanup costs imposed on an insured by CERCLA were damages.

Consistent with the holding in *Bituminous Casualty*, we now conclude and

---

[3]75 F.3d 1048 (5th Cir. 1996).

[4]42 U.S.C. § 9601 *et seq.*

[5]The *Bituminous* policy provided coverage for "all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident." 75 F.3d at 1052.

hold that environmental cleanup costs, whether incurred by the federal government under CERCLA or by an individual who voluntarily undertakes the task of cleaning up hazardous waste, are damages and thus are covered by the language of Century's policy. We are persuaded that such a reading of the subject insurance policy is consistent with the conclusions of several federal courts and with decisions of Texas courts.[6]

## 2. *Pollution and Care, Custody and Control Exclusions*

In its motion for summary judgment, Century contended that either the pollution exclusion clause[7] or the care, custody and control exclusion clause[8] of its policy precluded recovery by SnyderGeneral. The district court disagreed on both counts, finding that the term "sudden" in the pollution exclusion clause had a temporal component, and that SnyderGeneral had created a question of fact as to the suddenness of the TCA discharge by alleging that it occurred within a 24-hour

---

[6]*See id.*, 75 F.3d at 1053 (citing decisions of federal courts); and *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987) ("[W]hen the language [of an insurance policy] is susceptible of more than one construction, [it] should be construed strictly against the insurer and liberally in favor of the insured.").

[7]"[T]his policy shall not apply to . . . property damage arising out of the discharge . . . of . . . toxic chemicals . . . into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge. . .is sudden and accidental."

[8]"[T]his policy shall not apply to: property damage to: (1) property owned or occupied by or rented to the insured; (2) property used by the insured; or (3) property in the care, custody or control of the insured as to which the insured is for any purpose exercising physical control."

period. We find no error in the district court's finding.[9] We likewise find no error in the district court's determination that under Texas law, the care, custody and control exclusion only precludes insurance coverage in cases in which the insured totally and physically manipulates property. As Century failed to establish that SnyderGeneral totally and physically used or controlled the entire pool of groundwater at the Wilmington facility, it was not entitled to summary judgment.[10]

For the foregoing reasons, the judgment of the district court is AFFIRMED in part and VACATED and REMANDED in part for further proceedings consistent herewith.

---

[9]*See Mustang Tractor & Equip. Co. v. Liberty Mut. Ins. Co.,* 76 F.3d 89, 93 (5th Cir. 1996) (holding that "'[s]udden' may only reasonably be construed to mean quick or brief").

[10]*See Hartford Cas. Co. v. Cruse,* 938 F.2d 601, 604 (5th Cir. 1991) ("The [homeowners] continued inhabiting the house while [the contractor] worked on the foundation. We thus reject the contention that [the contractor] had care, custody, or control of the entire house. 'The cases have limited this 'control' to the particular object of the insured's work. . .and to other property which he totally and physically manipulates.'") *(quoting Goswick v. Employers' Cas. Co.,* 440 S.W.2d 287, 289-90 (Tex. 1969)).