**BLUE MARLIN CONSTRUCTION CO., INC.**

v.

**GENERAL STAR INDEMNITY CO.**

No. CIV.A. G–98–47.

United States District Court,
S.D. Texas,
Galveston Division.

Aug. 18, 1998.

Christopher David Bertini, Mills Shirley Eckel and Bassett, Galveston, TX, for Plaintiff.

Beth D. Bradley, Thompson Coe Cousins & Irons, Dallas, TX, Ellen Lewis Van Meir, Thompson Coe Cousins and Irons, Dallas, TX, for Defendant.

*ORDER GRANTING DEFENDANT'S MO-TION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAIN-TIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

KENT, District Judge.

Plaintiff brings this case seeking a declaration of Defendant's duties and obligations pursuant to an insurance contract entered into by both parties. Plaintiff also alleges breach of contract, breach of the common-law duty of good faith and fair dealing pursuant to *Aranda v. Ins. Co. of North America,* 748 S.W.2d 210 (Tex.1988), violation of the Texas Insurance Code, TEX. INS. CODE ANN. art. 21.21, and violation of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. COMM. CODE ANN. § 17.46 *et seq.* Now before the Court are Motions for Partial Summary Judgment from both Plaintiff and Defendant. For the reasons that follow, Defendant's Motion for Partial Summary Judgment is **GRANTED,** and Plaintiff's Motion for Partial Summary Judgment is **DENIED.** Furthermore, the remainder of Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE.**

## I. FACTUAL SUMMARY

The facts of this case are not disputed. On July 28, 1996, Plaintiff was employed by Applied Industrial Materials Corporation ("AIMCORP"), providing certain equipment, labor, and expertise in the marine contracting and pile driving field. Pursuant to instructions from AIMCORP, Plaintiff's personnel were required to move a vibro hammer, a heavy piece of pile driving equipment leased by AIMCORP from a third party. The vibro hammer consists of two component parts: the hammer that actually physically does the pile driving, and the power pack. The component parts of the vibro hammer are connected by a series of hoses and wires which are bundled together. After moving the hammer component with a crane owned by Plaintiff, Plaintiff personnel repositioned the crane to pick up the power pack and hoses, which remained attached to the hammer. Unfortunately, while lifting the power pack, Plaintiff's crane buckled and the power pack fell on top of the hammer, damaging both component parts of the vibro hammer. No other equipment was damaged.

The cost to repair the damaged vibro hammer totaled $70,510.12. Initially, AIMCORP's insurance carrier, CIGNA, assumed the majority of the costs for the repair, except for the $10,000 deductible and one month lost lease time which was paid by Plaintiff. CIGNA later notified Plaintiff of its demand that Plaintiff reimburse CIGNA for the total amount paid to repair the vibro hammer. AIMCORP then filed suit against Plaintiff in Galveston County state court to recover those monies paid by AIMCORP's insurance carrier. That suit remains pending. After being sued, Plaintiff sought indemnity from Defendant pursuant to their insurance agreement. After Defendant investigated the claim, it determined that Plaintiff's claim for indemnity was not covered by the policy, because that policy excludes damage to tangible personal property in the "care, custody or control" of the insured and excludes damage to property "loaned to the insured." Defendant therefore rejected Plaintiff's claim. Thereafter, Plaintiff filed suit in this Court seeking a declaratory judgment that it is entitled to coverage; Plaintiff also alleges breach of contract, violations of the Texas Insurance Code, and violations of the DTPA.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* 477 U.S. at 248, 106 S.Ct. at 2510. The mere *existence* of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Casualty Co.,* 799 F.Supp. 691, 693 (S.D.Tex.1992)(noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553; *see also* FED. R. CIV. P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56. However, to meet its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 586–87, 106 S.Ct. at 1355–56 (quoting FED. R. CIV. P. 56(e)).

## III. ANALYSIS

■ The issue before the Court is ripe for summary resolution. Neither party disputes that the vibro hammer is tangible personal property that suffered "property damage" as that term is defined in the pertinent policy.

Thus, the issue before the Court is whether the policy exclusions found in the insurance contract apply to the undisputed facts of this case. The Court initially looks to the language of the policy. It provides:

1. Insuring Agreement

   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

   .    .    .    .    .

2. Exclusions.

This insurance does not apply to:

   .    .    .    .    .

   j.   "property damage" to:

   .    .    .    .    .

   (3)  property loaned to you;

   (4)  property in the care, custody or control of the insured;

■ Texas law construes insurance policies pursuant to the same rules of interpretation as are contracts generally. *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994). Contract interpretation is the means by which the Court determines the intent of the parties, which is primarily derived by examining the words used in the contract and the subject matter to which they relate. *See State Farm Mutual Auto. Ins. Co. v. Pan American Ins. Co.,* 437 S.W.2d 542, 544 (Tex.1969). The language used by the parties to a contract should be accorded its plain grammatical meaning, unless it definitely appears the intention of the parties would thereby be defeated. *See Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527, 529 (Tex.1987); *Lyons v. Montgomery,* 701 S.W.2d 641, 643 (Tex.1985). If the contract is worded so that it can be given a certain and definite meaning or interpretation, it is not ambiguous, and the Court will construe the contract as a matter of law. *See Coker v. Coker,* 650 S.W.2d 391, 393

(Tex.1983). The Court finds no ambiguities in the relevant language of the policy at issue here.

Plaintiff argues that the care, custody or control exclusion precludes insurance coverage only in cases in which the insured had *total and exclusive* control over the damaged property. According to Plaintiff, because prior to the accident Plaintiff's personnel were specifically directed to move the vibro hammer, because AIMCORP's personnel participated in some capacity in helping move the hammer, and because AIMCORP actually told Plaintiff's personnel where to move the hammer, Plaintiff did not have the requisite *total* control over the vibro hammer and the policy exclusion does not apply. In support of its argument, Plaintiff primarily relies upon three cases: *SnyderGeneral Corp. v. Century Indem., Co.*, 113 F.3d 536 (5th Cir. 1997); *National Standard Ins. Co. v. Wilson Indus., Inc.*, 556 S.W.2d 838 (Tex.App.—Houston [14th Dist.] 1997, no writ); and *Home Indem. Co. v. Fuller*, 427 S.W.2d 97, 102 (Tex.Civ.App.—Austin 1968, writ ref'd n.r.e.). As this Court reads these cases, they offer little support for Plaintiff's contention.

In *SnyderGeneral*, the insured sought, but was denied, coverage to recompense the cleanup of groundwater contamination. In denying the claim, the insurer contended that the care, custody or control exclusion applied, because the insured had spilled the contaminate while using the groundwater in its operations. *See SnyderGeneral*, 113 F.3d at 538. The court disagreed, holding that because the insurer could not show that the insured had total control of the groundwater—that is, because the insured was only extracting and using as much of the groundwater as was necessary for operations at the time of the groundwater contamination—the insurer could not deny coverage based on that policy exclusion. *See id.* 113 F.3d at 539. The case at bar is clearly different. Here, Plaintiff seeks repair monies for tangible personalty which Plaintiff's personnel were going to use and were therefore attempting to move. Unlike the situation in *SnyderGeneral*, this is

not a case where the damage was inflicted as a *result* of property in Plaintiff's control.[1] Instead, here, the damage was inflicted upon the *very* property in Plaintiff's control. Regardless of who directed Plaintiff's personnel to do so, it is clear that at the time it was damaged, the vibro hammer was in the care, custody, or control of Plaintiff.

*Wilson* too is inapposite. In *Wilson*, the insured was sued after the vessel it had chartered sunk. *See Wilson*, 556 S.W.2d at 838. In granting a directed verdict against the insurer, who had contended that the care, custody or control exclusion applied, the court noted that the charter agreement specifically stated that the owner of the vessel, and not the insured, was to maintain custody and control of the vessel. The court noted further that the insured used the vessel as a platform to perform its duties, but the vessel itself remained in the control of the captain of the vessel. *See id.* 556 S.W.2d at 839. Again, the situation extant in the *Wilson* case differs from that here. Although Plaintiff was clearly given instructions regarding what work needed to be completed, and although, to an extent, Plaintiff's personnel were told how to complete the work, it was personnel employed by Plaintiff who were actually moving the vibro hammer when it was damaged.

Finally, in *Fuller*, the insured was working on the engine of a boat when it exploded. *See Fuller*, 427 S.W.2d at 99–100. Holding against the insurer, the *Fuller* court found that, although the insured had secured the boat to the dock, had filled it with gasoline, had charged the battery, and had attempted to repair the motor at the time of the explosion, the insured did not actually have the right to exercise control over the boat. The court observed that the owner, who was present at the dock at the time of the explosion, had himself launched the boat and his small son remained aboard the boat at the time of the explosion. Thus, the policy exclusion was inapplicable. Again, the facts of this case differ materially from those before the court in *Fuller*. Here, unlike the insured in *Fuller*, who was simply working on the boat's motor when the explosion occurred, Plaintiff

---

1. This Court agrees with the holding in *SnyderGeneral*. In a groundwater contamination case, it is highly doubtful that the insured could ever be found to be in "control" of the groundwater.

in this case was actually moving the entire piece of equipment damaged and intended to use the vibro hammer to perform its contractual duties.

Instead of those cases cited by Plaintiff, this Court finds the holding in *Goswick v. Employers' Casualty Co.*, 440 S.W.2d 287 (Tex.1969), particularly instructive in the resolution of the present Motions. In *Goswick*, the insured was in the oil well servicing business and was hired to change an underground pump. It was necessary for the insured to remove rods and tubing from the well and, during that process, an explosion caused the tubing to drop to the bottom of the hole thus causing extensive damage to the well. *See id.* 440 S.W.2d at 289. The insurer denied coverage of the well on the basis of the "care, custody or control" exclusion. After stating the general rule that property under the "control" of the insured is limited to the particular object of the insured's work, usually personalty, and to other property which he totally and physically manipulates, the *Goswick* court determined that the insured had complete physical control over the rods and tubing, but did not have direct control over the well. The *Goswick* court further observed that not only was the damaged property under the immediate supervision of the insured, it was also a necessary element of the work involved. *See id.* However, because the damaged well was merely incidental to the insured's specific task, it was not within the policy exclusion and unlike the rods and tubing, was therefore covered by the policy.

In this Court's view, contrary to Plaintiff's contention, the fact that Plaintiff's personnel were acting pursuant to AIMCORP's instructions did not prevent Plaintiff from exercising care, custody or control over the vibro hammer.[2] As in *Goswick*, here Plaintiff, like any employee or independent contractor, was performing tasks pursuant to instructions when the accident occurred. Here, Plaintiff had immediate supervision of the vibro hammer, and it was a necessary element of Plaintiff's work. Plaintiff fully admits that it owned the crane, that its personnel were operating the crane, and that it intended to use the hammer to accomplish its contractual tasks. Plaintiff further concedes that it was employed by AIMCORP, and therefore was contractually bound to perform pile driving and other similar work for AIMCORP. Thus, contrary to Plaintiff's assertion, by definition, *every* task Plaintiff performed at the jobsite was at AIMCORP's request, either directly or indirectly; whether AIMCORP told Plaintiff's employees to do the work is therefore of no moment to this analysis. The Court understands that its holding today could be interpreted to mean that any piece of equipment used by an insured at the jobsite is excluded from damage coverage.[3] The Court, however, finds such an interpretation to be consistent with the terms of the policy at issue. On the other hand, if the Court accepts Plaintiff's argument, the policy exclusion at issue would never apply, because as AIMCORP'S employee, Plaintiff was constantly taking instructions regarding particular work to be done, and could never be said to be in *complete and total* control of anything. Such interpretation was clearly not the intention of these parties when entering the contract at issue.

Although a very close question, the Court concludes that based on the plain language of the contractual provision at issue, the vibro hammer was in the care, custody or control of Plaintiff at the time it was damaged. Therefore, according to the parties' contract, compensation for its damage is not covered by the relevant policy. Consequently, Defendants' Motion for Partial Summary Judgment is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment is **DENIED**. Having resolved the main claim regarding the issue of coverage, the Court declines to exercise supplemental jurisdiction over the remaining claims in this case; thus, Plaintiff's remaining claims are hereby **DIS-**

---

**2.** Indeed, Plaintiff's use of the vibro hammer created an implied bailment. *See Berlow v. Sheraton Dallas Corp.*, 629 S.W.2d 818, 821. Because of the bailment, it is clear that AIMCORP had every right to expect Plaintiff to return the vibro hammer in its original condition. This Court also relies upon the holding of *Hartford*

*Casualty Co. v. Cruse*, 938 F.2d 601, 604 (5th Cir.1991).

**3.** Of course, the Court's holding today is limited to the facts at issue here.

MISSED WITH PREJUDICE.  The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions.  Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED**

### *FINAL JUDGMENT*

For the reasons set forth in the Court's Order Granting Partial Summary Judgment in favor of Defendant issued this day, all of Plaintiff's claims are hereby **DISMISSED WITHOUT PREJUDICE.**  The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date.  The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**THIS IS A FINAL JUDGMENT.**