In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00449-CV




CONTINENTAL CASUALTY CO., Appellant
V.
FINA OIL & CHEMICAL CO., Appellee
* * *
FINA OIL & CHEMICAL CO., Appellant
V.
CONTINENTAL CASUALTY CO., Appellee
 

 
 
On Appeal from the 129th District Court
Harris County, Texas
Trial Court Cause No. 97-54451A
 

 
 
CONCURRING OPINIONThe majority holds that Fina was never an additional insured under A&B’s insurance
policies. Because I believe established law requires us to find that Fina became an additional
insured under on A&B’s GCL policy on August 18, 1997, when the certificate of insurance
naming Fina as an additional insured was issued by Continental, four days after Wisdom’s
injury, I concur in the judgment only.
I.        Continental’s AppealThe Additional Insured Endorsement provided with A&B’s Continental insurance
policies states that a person or organization becomes an additional insured only “if [1] you
[A&B] are required to add another person or organization as an additional insured on this
policy under a written contract or agreement currently in effect, or becoming effective during
the term of the policy, and [2] a certificate of insurance has been issued.” The majority
construes these provisions as conditions precedent to adding an insured to A&B’s policies. 
It reasons that the August 12, 1997 letter from A&B to Fina, offering “to furnish labor, tools,
material (not furnished by Fina), equipment, insurance and supervision to complete steel
erection for the above referenced buildings,” was insufficient to satisfy the condition in the
Additional Insured Endorsement that A&B be “required to add another person or organization
as an additional insured on this policy under a written contract or agreement.” Since this
condition was not fulfilled, Fina was never insured by Continental, despite the acknowledged
intentions of the parties and the issuance of a certificate of insurance expressly amending
A&B’s Continental insurance policies to add Fina.
           The majority acknowledges that Fina orally accepted A&B’s offer to insure it on
August 12, the day the offer was made; that, on that same day, A&B asked Continental to add
Fina to its insurance policies; and that, on August 18, A&B’s insurance agent issued a
certificate of insurance showing A&B as the insured under various Continental policies and
Fina as the certificate holder. However, the majority opines that the first condition precedent
to Fina’s addition as an insured on A&B’s policies could be fulfilled only by a legally
enforceable written contract requiring A&B to insure Fina under specific terms; and it points
out that the certificate of insurance contained the following disclaimer: “This certificate is
issued as a matter of information only and confers no rights upon the certificate holder [Fina]. 
This certificate does not amend, extend or alter the coverage afforded by the policies below.” 
Therefore, in the majority’s view, Fina did not become an insured even though, under the
heading, “Additional Insured,” the certificate provided:
FINA, its parent, subsidiaries and affiliated companies, and their
respective employees, officers and agents shall be named as additional insured
in each of Contractor’s policies, except Workers’ Compensation; however,
such extention [sic] of coverage shall not apply with respect to any obligations
for which FINA has specifically agreed to indemnify Contractor. 
 
           Since, in its view, Fina never was added to A&B’s insurance policies, the majority
holds that Continental did not waive its subrogation rights against Fina, even though, again,
the certificate of insurance provided, under the heading, “Subrogation”: 
All policies shall be endorsed to provide that underwriters and insurance
companies of Contractor shall not have any right of subrogation against FINA,
its parent, subsidiaries and affiliated companies, and their respective agents,
employees, officers, invitees, servants, contractors, subcontractors,
underwriters and insurance companies. 
 
           Likewise, because a condition precedent to the addition of Fina as an insured in the
Additional Insured Endorsement was not satisfied, the additional provisions in the
Endorsement—limiting Fina’s coverage to damages for liability arising out of premises A&B
owned, rented, leased, or occupied or to coverage for A&B’s work for or on behalf of Fina
and excluding coverage for exemplary damages assessed against Fina and for Fina’s own acts
and omissions—never took effect. Nor did the provision stating that, if A&B agreed in
writing to waive its right of recovery against any person or organization prior to the date of
a loss, Continental likewise waived any right of recovery it might have against Fina because
of payments it made for injury or damage arising out of A&B’s work done under a contract
with Fina.
           None of the foregoing writings, in the majority’s view, formed any part of the final
contract formed between A&B and Fina or formed a contract between and among A&B,
Continental and Fina. Rather, the majority holds that all prior oral and written negotiations
and agreements between A&B and Fina merged into two purchase orders issued by Fina on
August 22 and 25, 1997 for the proposed work showing A&B as the vendor and were
extinguished. The majority observes that the reverse side of the purchase orders contains
terms and conditions of the sale, as well as a merger clause, but that these terms and
conditions do not refer to the provision of insurance by the seller to the buyer. Since the
purchase orders do not provide for insurance or indemnity for Fina, or for waiver of
subrogation rights by Continental, the majority holds that Fina cannot claim a right to a
defense, to insurance, to indemnity, or to any other protection afforded by A&B’s insurance
policies, regardless of any claim made against it in connection with its contract with A&B.
           I disagree. I would hold that A&B’s August 12, 1997 proposal and Fina’s acceptance
were preliminary negotiations and agreements that merged into a legally enforceable
insurance contract between and among A&B, Fina, and Continental with Continental’s
issuance of a certificate of insurance on August 18, amending A&B’s policies to add Fina. 
Fina’s August 22 and 25, 1997 purchase orders concerned a substantially different
matter—Fina’s purchase of labor and equipment from A&B to erect structural steel for the
“Train 9" project under terms stated in the purchase orders. The merger clauses in these two
orders, by their express terms, extinguished only “inconsistent” prior proposals, quotes, and
written contracts. Since neither A&B’s obligation to insure Fina with respect to the project
nor the contract of insurance is inconsistent with A&B’s purchase of labor and equipment
from Fina, the insurance contract adding Fina as an additional insured is, in my view, valid
and took effect under its terms on August 18, 1997, four days after Wisdom’s accident.
           I would further hold that the requirement of a written contract obligating A&B to
insure Fina is not a condition precedent to Fina’s addition to A&B’s Continental insurance
policies, but a covenant that was satisfied by Continental’s issuance of a certificate of
insurance expressly amending A&B’s policies to add Fina.

           Formation of Contract
           Insurance policies are contracts, and their construction is governed by the rules of
construction applicable to all contracts. Balandran v. Safeco Ins. Co., 972 S.W.2d 738, 740-41 (Tex. 1998); Grain Dealers Mut. Ins. Co. v. McKee, 943 S.W.2d 455, 458 (Tex. 1997). 
In construing a written contract, the primary goal of the court “is to give effect to the written
expression of the parties’ intent.” Balandran, 972 S.W.2d at 741. Moreover, insurance
policies are interpreted and construed liberally in favor of the insured and strictly against the
insurer, especially when the court is dealing with exceptions and limitations. Gonzalez v.
Mission Am. Ins. Co., 795 S.W.2d 734, 737 (Tex. 1990); Simpson v. GEICO Gen. Ins. Co.,
907 S.W.2d 942, 945 (Tex. App.—Houston [1st Dist.] 1995, no writ).
           A contract is established when agreement is reached on all terms, and preliminary
agreements are expressly or impliedly incorporated into the final offer and acceptance. Kuzel
v. Aetna Ins. Co., 650 S.W.2d 193, 195(Tex. App.—San Antonio 1983, writ ref’d n.r.e.); Ark.
Oak Flooring Co. v. Mixon, 369 S.W.2d 804, 807(Tex. Civ. App.—Texarkana 1963, no writ)
(oral agreement is not superseded or invalidated by subsequent integration or by written
agreement if agreement is not inconsistent with integrated contract). As in all contracts, the
offer and acceptance in insurance negotiations must be such as to evidence a complete
agreement, or no obligations arise. Republic Nat’l Life Ins. Co. v. Hall, 232 S.W.2d 697, 699
(Tex. 1950); Durham Life Ins. Co. v. Cole, 608 S.W. 2d 838, 839 (Tex. Civ. App.—Eastland,
1980, writ ref’d n.r.e.).
            Merger occurs when the parties to an earlier agreement enter into a subsequent written
integrated agreement covering the same subject matter. Fish v. Tandy Corp., 948 S.W.2d
886, 898(Tex. App.—Fort Worth 1997, pet. denied). In a contract case, whether merger has
occurred is largely a matter of the intention of the parties. Id. Before one contract is merged
into another, the last contract (1) must be between the same parties as the first; (2) must
embrace the same subject matter; and (3) must have been so intended by the parties. Id. 
Preliminary negotiations, whether written or unwritten, that have led to the execution of a
written agreement are merged in it, and the writing must be taken as expressing the final
views of the parties. Gulf Oil Corp. v. Spence & Howe Constr. Co., 356 S.W.2d 382, 385-86
(Tex. Civ. App.—Houston 1962), aff’d, 365 S.W.2d 631 (Tex. 1963); Schultze v. Schultze,
209 S.W.2d 791, 795 (Tex. Civ. App.—Eastland 1948, writ ref’d n.r.e.). A subsequent
agreement supersedes the original agreement, however, only to the extent of any
inconsistencies. Leon Ltd. v. Albuquerque Commons P’ship, 862 S.W.2d 693, 700 (Tex.
App.—El Paso 1993, no writ). Subsequent integration will not supersede or invalidate a
written agreement relating to the same subject matter if the agreement is such that it might
naturally be made as a separate agreement. Hubacek v. Ennis State Bank, 317 S.W.2d 30, 32
(Tex. 1958); Fish, 948 S.W.2d at 898; Leon Ltd., 862 S.W.2d at 700-01.
           Here, A&B’s August 12, 1997 proposal offered “to furnish labor, tools, certain
materials (not furnished by Fina), equipment, insurance, and supervision to complete the steel
erection for the above-referenced buildings,” i.e., buildings for the Train 9 project (emphasis
added). Fina orally accepted this offer the same day; and, on that day, A&B notified its
insurance carrier, Continental, to add Fina as an additional insured to its policies. A&B’s
proposal, Fina’s acceptance, A&B’s notification of Continental, Continental’s issuance of the
certificate of insurance adding Fina to A&B’s policies, and the policies themselves, evidence
a clear intent on the part of A&B, Fina, and Continental to furnish insurance to Fina for the
Train 9 project under specific terms. This intent is fully consistent with and finalizes the
intent expressed by the parties in their prior oral and written negotiations and agreements that
Fina be added to A&B’s Continental insurance policies for the Train 9 project. The
preliminary communications merged into the written contract of insurance on August 18,
1997, when the certificate of insurance amended Continental’s policies to add Fina.
           The purchase orders executed by Fina on August 22 and 25 constitute a separate
contract from the insurance contract: these comprised a commercial contract between A&B
and Fina finalizing the terms of the purchases reflected in the orders. A&B’s August 12
proposal to furnish labor, tools, and certain equipment for the Train 9 project merged into this
final agreement; and, to the extent the proposal was inconsistent with the purchase orders, it
was extinguished. The merger clause on the back of the August 22 and 25 orders merely
memorializes the merger doctrine; it does not change that doctrine. See Fish, 984 S.W.2d at
898. Since the terms of the purchase orders are not inconsistent with the terms of the
insurance contract, but instead pertain to a separate agreement between A&B and Fina
covering a different subject matter, the insurance agreement between and among A&B, Fina,
and Continental did not merge into the purchase orders and was not extinguished by them.
           Nevertheless, because, under the express terms of the Additional Insured Endorsement,
A&B’s insurance policies were amended to insure Fina on August 18, 1997, the date the
certificate of insurance issued, Fina was not insured by Continental on August 14, 1997, the
date Wisdom was injured. See Republic Nat’l Life Ins. Co. v. Hall, 232 S.W.2d at 699 (offer
and acceptance in insurance negotiations must be such as to evidence complete agreement,
or no obligations arise); Inglish v. Prudential Ins. Co., 928 S.W.2d 702, 706 (Tex.
App.—Houston [1st Dist.] 1996, writ denied) (there is no insurance contract unless and until
application for insurance is accepted by insurer). Fina was, therefore, not insured by
Continental for Wisdom’s injury and Continental had no obligation to defend or cover Fina
for Wisdom’s claims.
           Conditions Precedent
           I also respectfully disagree with the majority’s interpretation of the provision in the
Additional Insured Endorsement that A&B must be required by a written contract to add Fina
as an additional insured on its Continental policies as a condition precedent to the addition
of Fina to those policies which could be satisfied only by a prior written agreement legally
binding A&B to insure Fina; and I disagree with its holding that the terms of the provision
were not satisfied because A&B’s August 12, 1997 written proposal to insure Fina for the
Train 9 project was not a legally binding agreement to insure Fina.
           It is well established that, because of their harshness, conditions are not favored in
Texas law; and, in construing a contract, forfeiture by finding a condition precedent is to be
avoided when another reasonable reading of the contract is possible. Hohenberg Bros. Co.
v. George E. Gibbons & Co., 537 S.W.2d 1, 3 (Tex. 1976); America’s Favorite Chicken Co.
v. Samaras, 929 S.W.2d 617, 627 (Tex. App.—San Antonio 1996, writ denied). Whether a
certain contractual provision is a condition rather than a promise must be gathered from the
contract as a whole and from the intent of the parties. Hohenberg Bros., 537 S.W.2d at 3;
Belmont Constructors, Inc. v. Lyondell Petrochemical Co., 896 S.W.2d 352, 354 (Tex.
App.—Houston [1st Dist.] 1995, no writ). Where the intent of the parties is doubtful or
where a condition would impose an absurd or impossible result, the agreement will be
interpreted as creating a covenant rather than a condition. Hohenberg Bros., 537 S.W.2d at
2; Belmont Constructors, 896 S.W.2d at 357. Courts must presume that the objective of an
insurance contract is to insure and should not construe a policy to defeat that objective unless
the language requires it. Goswick v. Employers’ Cas. Co., 440 S.W.2d 287, 289 (Tex. 1969);
Warrilow v. Norrell, 791 S.W.2d 515, 524 (Tex. App.—Corpus Christi 1989, writ denied). 
           It is much more reasonable to construe the provision in the Additional Insured
Endorsement that A&B be required by a written contract to insure Fina as a covenant that was
satisfied by the contract insuring Fina which became effective on August 18, when the
certificate of insurance issued, rather than as a condition requiring a separate, legally
enforceable prior agreement to insure as a necessary prerequisite for the addition of an
insured to A&B’s Continental policies. Not only is the majority’s interpretation of the
provision unreasonable, the majority construes the Additional Insured Endorsement strictly
against the insured and in favor of the insurer who drafted it, contrary to established
authority; and it construes the Endorsement in such a way as to defeat the acknowledged
intent of the parties and the objective of insuring Fina expressly stated in the certificate of
insurance. The majority’s holding is, therefore, contrary to established law.
           Moreover, an insurer’s insertion of a condition precedent to the formation of insurance
contracts into its policies that is designed to and does thwart the legitimate expectations and
intentions of potential insureds, through language that gives no hint of its draconian
consequences, is clearly against public policy. See Goswick, 440 S.W.2d at 289 (courts must
presume that the objective of an insurance contract is to insure and should not construe a
policy to defeat that objective unless the language requires it); see also DeSantis v.
Wackenhut Corp., 793 S.W.2d 670, 677 (Tex. 1990) (the most basic policy of a law is the
protection of the parties’ justified expectations); Chase Manhattan Bank, N.A. v. Greenbriar
North Section II, 835 S.W.2d 720, 723, 725 (Tex. App.—Houston [1st Dist.] 1992, no writ)
(same; parties may not include conditions in their contracts that violate law or public policy).
           For the foregoing reasons, I concur with that part of the judgment disposing of
Continental’s appeal on the grounds that Fina was not insured by A&B’s policies on August
14, 1997, the date of Wisdom’s injury, but not for the majority’s reasons.

II.      Fina’s Appeal
           In response to Fina’s appeal, the majority affirms the trial court’s ruling that
Continental did not waive its right of subrogation against Fina. However, it rules as it does
because of its narrow construction of the contract between Fina and A&B. It observes that
A&B’s proposal makes a single mention of insurance, with no specific details or terms, and
that the proposal makes no reference at all to subrogation or a waiver. It concludes that,
because there is no language to create an ambiguity in the offer, the awareness and intention
of A&B and Fina are irrelevant. I again disagree.
           The certificate of insurance issued by A&B’s insurer on August 18, 1997 expressly
provides that Fina is an additional insured as of the date of issuance of the certificate and that
“[a]ll policies shall be endorsed to provide that underwriters and insurance companies of
Contractor shall not have any right of subrogation against FINA.” The problem is that the
insurance policy did not take effect until August 18, 1997, after Wisdom’s accident.
           Fina also argues that subrogation of an insurer against its insured has been rejected in
Texas, citing Texas Association of Counties County Government Risk Management Pool v.
Matagorda County, 52 S.W.3d 128, 134 (Tex. 2000). I agree; but Texas Association of
Counties also holds that an insurer paying a claim under a policy is equitably subrogated to
any claim the insured may have against a third party responsible for the insured’s injury. Id.
at 133. As Fina was not insured by Continental under A&B’s policies on August 14, 1997,
the date of Wisdom’s injury, Continental was not seeking subrogation against its insured
when it sought subrogation to Wisdom’s rights against Fina; Fina is a third party with respect
to Continental for Wisdom’s claims against it. I concur, therefore, in the majority’s holding
that Continental did not waive its right of subrogation to Wisdom’s rights to recover from
Fina.
 
                                                                  Evelyn V. Keyes
                                                                  Justice
 
Panel consists of Justices Hedges, Nuchia, and Keyes.